UNITED STATES of America

v.

Ronald Lynn BRANUM, Defendant.

No. CR 94–94–JO.

United States District Court,
D. Oregon.

Dec. 20, 1994.

Kristine Olson Rogers, U.S. Atty., Dist. of Oregon, John F. Deits, Asst. U.S. Atty., Portland, OR, for U.S.

John W. Maroney, Portland, OR, for defendant.

### OPINION AND ORDER

ROBERT E. JONES, District Judge:

Defendant Ronald Lynn Branum moves to dismiss the indictment against him and vacate his plea pursuant to Fed.R.Crim.Pro. 12(b)(2). Branum claims that this federal prosecution is barred by the Double Jeopardy Clause of the Fifth Amendment because of a prior state civil forfeiture pursued by Multnomah County in a separate proceeding.

### BACKGROUND FACTS

I adopt the facts I found in the earlier suppression hearing based on Branum's

claim of illegal search and seizure. The facts are succinctly set out in the United States' brief, as summarized below.

## I. *Branum's Arrest*

During January, 1994, the Multnomah County Sheriff's Office was conducting an undercover state drug investigation using informant Billie Woolstenhulme (hereinafter "the informant"). The informant had arranged to purchase four ounces of methamphetamine for $4,800.00 from co-defendant Jonathon Ray Barr on January 26, 1994. Barr had told the informant, who relayed this information to the police, that Barr's supplier would be with him or would be close by and in sight because Barr's supplier did not trust him to be alone with the four ounces of methamphetamine. The informant also knew that Barr's supplier drove an older black Chevrolet Nova and told the police this fact.

At approximately 4:00 p.m. in the afternoon on January 26, 1994, defendant Ronald Branum arrived at the site previously arranged between Barr and the informant, the Rockwood Bowl bowling alley. Branum was driving a 1969 black Chevrolet Nova and had Barr as his passenger. Branum drove the vehicle very slowly through the parking lot and stopped to let Barr exit the car. As Barr approached the informant's vehicle, Branum slowly moved his car through the lot and parked about four or five car lengths behind and within direct line-of-sight of the informant's vehicle. While Barr was conducting the drug transaction with the informant and undercover police officer Dan Ball inside the informant's vehicle, Branum exited his car and walked into the rear of the bowling alley through double glass doors. The informant's vehicle was visible from Branum's location inside the bowling alley's glass doors. In the expert opinion of these trained drug investigators, Branum's driving, parking and movements appeared to be a counter-surveillance technique commonly used by drug traffickers to observe any threats to the drug transaction. As Barr was being arrested, officers went into the bowling alley to arrest Branum. No federal agents were involved in this arrest or investigation.

A search of Branum's person at the Multnomah County Sheriff's Office revealed $179.00 in his front pants pocket and $500.00 in his wallet, for a total of $679.00. The money was later hidden in two locations in a separate room at the Sheriff's Office, where a trained narcotics dog was able to locate it. In addition, what appeared to be drug records were found in Branum's wallet.

## II. *Forfeiture by Default*

On the same day as his arrest, January 26, 1994, Branum was served with and signed a Notice of Seizure form by the Sheriff's Office which advised him of the intent to forfeit the 1969 Chevrolet Nova and the $679.00. This form advised Branum that he had 21 days to file a claim if he intended to contest the forfeiture of the property. Branum did not file a claim, so Multnomah County obtained a Partial Judgment of Civil Forfeiture against him on March 11, 1994 based upon the application and affidavit of Richard Biles of the Sheriff's Office. A friend of Branum, Michael Pauker, filed a claim purporting to be the owner of the Chevrolet, but he eventually abandoned his claim.

## III. *Criminal Prosecution*

State criminal drug charges were brought against Branum in January, 1994, and continued until the matter was later referred to the U.S. Attorney's Office. On March 23, 1994, Branum was indicted by a federal grand jury on drug charges arising out of the January 26, 1994, arrest by the Multnomah County Sheriff's Office. The state prosecution against Branum was dismissed shortly thereafter.

Branum pleaded guilty to the federal indictment on October 12, 1994, and was sentenced to five years in prison on December 16, 1994 at which time I denied the present motion. Criminal jeopardy attaches when a guilty plea is entered. *See United States v. Stanwood,* 872 F.Supp. 791 (D.Or.1994).

## DISCUSSION

Branum moves to dismiss the indictment and vacate his guilty plea pursuant to Fed.

R.Crim.Pro. 12(b)(2), which allows a defendant to assert defenses and objections based on defects in the indictment before trial.

## I. *Jeopardy did not Attach in the State Forfeiture Proceeding*

As noted above, Multnomah County of the State of Oregon seized a vehicle and currency from Branum in the course of its drug investigation. Multnomah County then proceeded to forfeit the property pursuant to 1989 Oregon Laws Chapter 791. Despite receiving actual notice of Multnomah County's intention to forfeit the seized vehicle and currency, Branum did not file a claim to the property. Branum now contends that this uncontested administrative forfeiture constitutes a prior punishment for the same offense involved in the federal indictment, in violation of the Double Jeopardy Clause.

Branum was never a party to the state forfeiture because he did not claim the vehicle or the currency in the state administrative proceeding. *United States v. Torres*, 28 F.3d 1463 (7th Cir.1994). As a non-party, Branum was at no risk of jeopardy: "without risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor a further prosecution constitutes double jeopardy." *Id.* at 1465 (*citing Serfass v. United States*, 420 U.S. 377, 391–92, 95 S.Ct. 1055, 1064, 43 L.Ed.2d 265 (1975)). Jeopardy, even in the context of civil forfeiture, requires an adjudication of culpability. *United States v. Kemmish*, 869 F.Supp. 803, 805 (S.D.Cal.1994). It is axiomatic that "[y]ou can't have double jeopardy without a former jeopardy." *Torres*, 28 F.3d at 1465.

In addition, given the fact that Branum declined to assert a claim in the state forfeiture proceedings, there is no evidence in the record to support his claim to ownership of the forfeited property. In the absence of a claim the court is unwilling to presume ownership. *See Torres*, 28 F.3d at 1465 ("Indeed, because Torres did not make a claim in the forfeiture proceeding, we have no reason to believe that he owned or had any interest in the money."). This is particularly true in the present case, where a claim to the vehicle was asserted by a third party.

Because there is no basis to find that Branum had an interest in the property, I decline to hold that the forfeiture of the property by the State of Oregon imposed a penalty on him. Therefore the civil forfeiture proceeding did not place Branum in "jeopardy of life or limb" within the meaning of the Fifth Amendment, and cannot serve as the basis for a double jeopardy claim.

## II. *Double Jeopardy Does not Apply to Proceedings by Separate Sovereigns*

Even if Branum could somehow establish that the state forfeiture proceeding constituted punishment, his double jeopardy challenge would nevertheless fail. Under the dual sovereignty doctrine, successive prosecutions by separate sovereigns for crimes arising out of the same acts are not barred by the Double Jeopardy Clause. *United States v. Traylor*, 978 F.2d 1131, 1132 (9th Cir.1992) (*citing Heath v. Alabama*, 474 U.S. 82, 88, 106 S.Ct. 433, 437, 88 L.Ed.2d 387 (1985)). The doctrine "is founded on the common-law conception of crime as an offense against the sovereignty of the government." *Heath*, 474 U.S. at 88, 106 S.Ct. at 437. For this reason, when a single act transgresses the laws of two sovereigns, "it cannot be truly averred that the offender has been twice punished for the same offence; but only that by one act he has committed two offences, for each of which he is justly punishable." *Id.* (*citing Moore v. Illinois*, 14 How. 13, 20, 14 L.Ed. 306 (1852)). *See also, United States v. Wheeler*, 435 U.S. 313, 316–18, 98 S.Ct. 1079, 1082–83, 55 L.Ed.2d 303 (1978); *Abbate v. United States*, 359 U.S. 187, 194–95, 79 S.Ct. 666, 670–71, 3 L.Ed.2d 729 (1959); *United States v. Lanza*, 260 U.S. 377, 382, 43 S.Ct. 141, 142–43, 67 L.Ed. 314 (1922).

There is no question that the State of Oregon, which initiated the forfeiture proceeding, and the United States, which filed the criminal charges to which Branum pleaded guilty, are separate sovereigns for purposes of the Double Jeopardy Clause. *Traylor*, 978 F.2d at 1132. The authority of the United States and the several states to legislate and enforce their own criminal codes is one of the pillars of American jurisprudence.

*See Heath,* 474 U.S. at 89, 106 S.Ct. at 438 ("[State] powers to undertake criminal prosecutions derive from separate and independent sources of power and authority originally belonging to them before admission to the Union and preserved to them by the Tenth Amendment."). As stated by Justice Holmes, the proposition that the state and federal governments may punish the same conduct "is too plain to need more than statement." *Westfall v. United States,* 274 U.S. 256, 258, 47 S.Ct. 629, 71 L.Ed. 1036 (1927).

The dual sovereignty doctrine has been applied to defeat double jeopardy challenges to civil forfeiture. *See, e.g., United States v. Certain Real Property and Premises Known as 38 Whalers Cove Drive, Babylon, NY,* 954 F.2d 29, 38 (2d Cir.), *cert. denied, sub nom. Levin v. United States,* — U.S. —, 113 S.Ct. 55, 121 L.Ed.2d 24 (1992). In *38 Whalers Cove Drive,* the Second Circuit stated: "Even assuming that the forfeiture is a criminal penalty, the Double Jeopardy Clause prohibits two criminal punishments for the same offense only when they are sought by the same sovereign government." 954 F.2d at 38. *See also, United States v. A Parcel of Land With a Bldg. L. Thereon,* 884 F.2d 41 (1st Cir.1989). A straightforward application of the dual sovereignty doctrine, under the facts of this case, compels a conclusion that Branum has not been subjected to two penalties by the same sovereign.

█ Branum argues that his case falls within the so-called "sham" or "cover" exception to the dual sovereignty doctrine. This exception, also known as the *Bartkus* exception in reference to the Supreme Court's decision in *Bartkus v. Illinois,* 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959),[1] precludes dual prosecutions by separate sovereigns: "[i]f the second prosecution, otherwise permissible under the dual sovereignty rule, is not pursued to vindicate the separate interests of the second sovereign, but is merely pursued as a sham on behalf of the sovereign first to prosecute...." *United States v.*

*Koon,* 34 F.3d 1416, 1438 (9th Cir.1994) (*citing United States v. Guy,* 903 F.2d 1240, 1242 (9th Cir.1990)). To establish the exception a defendant must do more than show that there was cooperation between federal and state authorities; the defendant must prove instead that "the subsequent prosecuting entity is a 'tool' for the first, or the proceeding is a 'sham,' done at the behest of the prior authority." *Koon,* 34 F.3d at 1439.

In this case, Branum has presented no evidence to suggest, let alone establish, that the exception for sham or cover, which is "narrow and seldom successfully pursued," applies in this case. *Koon,* 34 F.3d at 1439 n. 19. The initial investigation of Branum was conducted solely by local law enforcement officers and the case was later referred to the United States Attorney's Office for prosecution. The federal prosecution was conducted solely by federal prosecutors. Branum's claim of double jeopardy fails because the forfeiture and criminal action were brought by separate sovereigns and there is not one scintilla of evidence of any sham or collusion, nor of any agents of one government acting as a cover for the other. This is simply a run-of-the-mill drug transaction that would have been left for state prosecution except for the harsher penalties available under the federal sentencing guidelines.

In *Koon,* the well-publicized prosecution of two police officers on federal civil rights charges following their acquittal on state criminal charges in the Rodney King incident, the Ninth Circuit declined to apply the sham exception even though the state and federal investigations were concurrent, involved the same witnesses, and relied on many of the same investigative reports. 34 F.3d at 1439. The court observed that use of the same evidence in the state and federal trials did not create a double jeopardy problem. *Id.*

Similarly, in *Traylor,* a criminal prosecution based on charges of mail fraud, the

---

1. In *Bartkus,* the Supreme Court upheld a state court conviction following the acquittal of the defendant on substantially similar federal charges. Justice Frankfurter, rejecting the notion that the state prosecution was a sham, noted that the record did not "support the claim that the State of Illinois in bringing its prosecution was merely a tool of the federal authorities, who thereby avoided the prohibition of the Fifth Amendment against a retrial of a federal prosecution after an acquittal." *Bartkus,* 359 U.S. at 123–24, 79 S.Ct. at 678.

Ninth Circuit declined to treat the State of California as an agent of the federal government merely because California had previously sought civil fines against the defendant in federal court. The court held that despite the federal court's exercise of pendent jurisdiction over the California state law claims, "the source of California's power to prosecute remained the California Business and Professions Code, and it was pursuant to that statute that the district court imposed the civil fines." 978 F.2d at 1132.

In other circuits, instances of routine cooperation between state and federal law enforcement officials have been held insufficient to invoke the sham exception. *See, e.g., United States v. Garner,* 32 F.3d 1305, 1310–11 (8th Cir.1994) (no evidence of collusion where federal agents had no contact with state authorities until the state case was completed); *United States v. Harrison,* 918 F.2d 469, 475 (5th Cir.1990) (sham exception did not apply where federal government was not involved in matter until defendant had entered plea agreement and received sentence in state court). Even in a case where virtually all resources brought to bear on a criminal investigation are provided by the federal government, separate prosecutions are allowed under the dual sovereignty doctrine. In *United States v. Baptista–Rodriguez,* 17 F.3d 1354 (11th Cir.1994), the Eleventh Circuit rejected the appellants' claim of sham prosecution based on an unsupported contention that the initial prosecution by the Bahamas was conducted directly by American authorities. Observing that sovereigns may share resources in connection with the investigation of criminal acts, the court limited application of the sham exception to situations where the evidence shows that "one sovereign controlled, dominated, or manipulated the *prosecution* of the defendant by the other." *Id.* at 1362 (emphasis in original).

In this case there is no evidence to suggest that State of Oregon and the United States colluded or otherwise failed to act as independent sovereigns. At most, Branum has shown a routine level of cooperation between state and federal authorities. Therefore, the doctrine of dual sovereignty precludes Bra-num's double jeopardy challenge to the federal charges.

## CONCLUSION

For the foregoing reasons, Branum's motion to dismiss the indictment and vacate his plea is denied.