**UNITED STATES of America, Plaintiff,**

v.

**Billy Ray COLLINS and Sheila Annette Roberts, Defendants.**

No. CR 94–357–RE.

United States District Court,
D. Oregon.

Jan. 27, 1995.

Kristine Olson Rogers, U.S. Atty., Dist. of Oregon, Michael W. Brown, Asst. U.S. Atty., Portland, OR, for U.S.

Mark Morrell, Mark Smolak, Portland, OR, for defendants.

### OPINION AND ORDER

ROBERT E. JONES, Judge:

Defendants Billy Ray Collins and Sheila Roberts move to dismiss the indictment, contending that this federal prosecution is barred by the Double Jeopardy Clause of the Fifth Amendment. I have considered the evidence and arguments presented by the parties and conclude that the motions must be denied.

## FINDINGS OF FACT

### I. *Proceedings Against Collins and Roberts*

On January 20, 1994, Portland police officers executed a search warrant at the residence of defendants Collins and Roberts. At that time the officers seized numerous items from Collins, including over $28,000.00 in currency, several automobiles, three pieces of real property, and electronic equipment, including a cellular telephone, televisions, camcorders, stereo equipment and computer equipment. The officers seized a 1986 Datsun 280–Z and $357.00 in currency from Roberts. In addition, the officers seized various items as evidence of drug crimes, including documents, a scale, and approximately one kilo of cocaine.

No state criminal charges were filed against Collins and Roberts, but the City of Portland filed civil forfeiture actions involving the property seized from Collins and Roberts. Subsequently, Roberts entered into a stipulated judgment of forfeiture which was filed in the District Court for Multnomah County on February 17, 1994. Under the stipulated judgment, Roberts retained her Datsun 280–Z, but forfeited her interest in the $357.00 and gave up any interest in the property seized from Collins on January 20, 1994. On June 29, 1994, Collins entered into a stipulated judgment of forfeiture, in which he retained the real property, two cars and $3,700.00 of the defendant currency, but forfeited his interest in the remaining currency, two cars, and the other personal property seized on January 20, 1994.

On October 26, 1994, a federal indictment issued charging Collins and Roberts with three counts of distribution of cocaine and one count of possession of cocaine with the intent to distribute. Count 1 alleges distribution of cocaine on January 7, 1994, count 2 alleges distribution of cocaine on January 11, 1994, count 3 alleges distribution of cocaine on January 18, 1994, and count 4 alleges possession of cocaine on January 20, 1994.

### II. *Relations Between Federal and State Authorities*

In late 1993, Portland police officers Richard Hascall and Paul Weatheroy became aware of a potential informant who might be able to provide evidence against local drug traffickers. This information came from a Portland police officer who works with the FBI. Hascall and Weatheroy reached an agreement with the informant, wherein the informant would attempt to provide evidence against drug traffickers in exchange for not being prosecuted. The evidence would be secured by setting up controlled drug purchases by the informant. It was anticipated that the informant might be able to provide evidence against multiple drug traffickers.

Before entering into the agreement with the informant, Hascall and Weatheroy consulted Assistant United States Attorney Michael Brown to determine if the United States would be interested in pursuing federal criminal charges based on the evidence developed by the informant. Brown indicated that the informant's evidence probably would meet federal criteria for prosecution. The federal authorities receive numerous referrals of potential criminal cases from state and local authorities, and accept a high percentage of the referrals which meet the federal criteria for prosecution. However, the United States does not always accede to referrals made by other agencies.

The informant performed controlled purchases of cocaine from Collins on January 1, 1994, January 11, 1994, and January 18, 1994. Based on this information, Hascall and Weatheroy secured a search warrant from Multnomah County District Judge Charles B. Guinasso. The officers received assistance in preparing the search warrant from Gary Meabe, a Deputy District Attorney for Multnomah County. The officers anticipated that the search would yield evidence of crimes, but also anticipated that the search might reveal property that could be seized for forfeiture. The officers informed Brown about the search but did not consult Brown or receive any direction from Brown regarding the possibility of civil forfeiture. During the next few months Brown received periodic updates from Hascall and Weatheroy regarding the progress of the investigation.

The civil forfeiture cases against the property seized from Collins and Roberts were conducted by Jeff Ratliff, who runs the for-

feiture unit of the Multnomah County District Attorney's office. Ratliff did not consult any federal employee before initiating the forfeiture actions. Ratliff spoke to Brown several times in May and June 1994, regarding a request by defendants' attorneys for documents relating to the investigation. Ratliff initially contacted Brown to determine whether release of the documents would harm the ongoing investigation based on the informant. Brown asked Ratliff to refrain from action while he checked on the status of the investigation. Brown later informed Ratliff that in his opinion release of the documents would not compromise the investigation. However, Ratliff disagreed with this assessment and declined to release the documents at that time. Brown did not participate in the negotiation of the settlements of the civil forfeiture actions.

Brown made the decision to proceed with a federal prosecution in April 1994, based upon the fact that more than 500 grams of cocaine had been seized in the search of the Collins and Roberts residence. However, Brown refrained from seeking an indictment for several months because the investigation was still continuing with respect to other potential defendants. From the outset of the investigation in late 1993 the Portland police officers and Brown had assumed, without discussion, that certain prosecutions might be delayed pending the completion of the investigation, in order to protect the identity of the informant.

## CONCLUSIONS OF LAW

■ Collins and Roberts contend that this federal prosecution is barred by the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution because they have already been subjected to civil forfeitures based on the same offense. The United States contests whether the criminal charges are, in fact, based on the same offenses as the civil forfeitures. However, it is unnecessary to reach that issue because the

doctrine of dual sovereignty applies in this case.[1]

■ I have previously applied the dual sovereignty doctrine in the context of a double jeopardy challenge involving a state forfeiture and a federal prosecution. *United States v. Branum,* 872 F.Supp. 801 (D.Or. 1994). Under the dual sovereignty doctrine, successive prosecutions by separate sovereigns for crimes arising out of the same acts are not barred by the Double Jeopardy Clause. *United States v. Traylor,* 978 F.2d 1131, 1132 (9th Cir.1992) (*citing Heath v. Alabama,* 474 U.S. 82, 88, 106 S.Ct. 433, 437, 88 L.Ed.2d 387 (1985)). There is no dispute that the United States and the State of Oregon, of which the City of Portland is a political subdivision, are separate sovereigns for the purposes of the Double Jeopardy Clause. Thus, the civil forfeiture actions and the criminal charges in this case were brought by separate sovereigns.

Defendants argue, however, that this case falls within the *Bartkus* exception to the dual sovereignty doctrine. In *Bartkus v. Illinois,* 359 U.S. 121, 123–24, 79 S.Ct. 676, 678–679, 3 L.Ed.2d 684 (1959), the Supreme Court suggested that dual prosecutions by separate sovereigns might be prohibited "[i]f the second prosecution, otherwise permissible under the dual sovereignty rule, is not pursued to vindicate the separate interests of the second sovereign, but is merely pursued as a sham on behalf of the sovereign first to prosecute...." *United States v. Koon,* 34 F.3d 1416, 1438 (9th Cir.1994) (*citing United States v. Guy,* 903 F.2d 1240, 1242 (9th Cir. 1990)). To establish this "narrow" exception a defendant must do more than show that there was cooperation between federal and state authorities; the defendant must prove instead that "the subsequent prosecuting entity is a 'tool' for the first, or the proceeding is a 'sham,' done at the behest of the prior authority." *Koon,* 34 F.3d at 1439.

In this case I have conducted a thorough evidentiary hearing and can discern absolutely no evidence that the United States has

---

1. For the same reason I find it unnecessary to address the United States' argument that forfeitures under Oregon statutes serve a compensatory rather than a punitive purpose. Further, for the reasons stated in *United States v. Stanwood,* 872 F.Supp. 791 (D.Or.1994), I deny the United States' request for a stay.

been controlled by the City of Portland or Multnomah County, or that this criminal prosecution is a sham perpetrated at the request of the other entities. Rather, the evidence establishes that although the state and federal authorities have cooperated in using the information made available through the informant, each entity has acted independently, pursuing and giving priority to its own interests. The federal prosecutor's primary concern was to assert criminal charges against the defendants while protecting the ongoing investigation. The civil forfeiture actions were not controlled by the federal government; indeed, the deputy district attorney in charge of the forfeitures felt free to disregard the federal prosecutor's opinion on at least one point. I find, beyond a doubt, that this case involves a routine instance of cooperation between state and federal law enforcement officials that does not fall within the *Bartkus* exception to the dual sovereignty doctrine.

Defendants argue, however, that the Supreme Court's decision in *Austin v. United States*, —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), impliedly overruled *Bartkus*, so that the dual sovereignty doctrine no longer prevents a double jeopardy challenge to successive state and federal punishments. I have carefully reviewed the *Austin* opinion, and cannot discern any intention to abrogate the dual sovereignty doctrine. The *Austin* opinion is concerned with the applicability of the Excessive Fines Clause of the Eighth Amendment to civil forfeiture cases and does not address the issue of dual sovereignty. Although *Austin*'s holding that civil forfeiture can constitute punishment is relevant to double jeopardy claims, the Court made no attempt to apply that holding in the context of double jeopardy claims. I conclude that the dual sovereignty doctrine remains applicable in double jeopardy cases.[2]

Accordingly, defendants' double jeopardy challenge to the federal charges is precluded by the doctrine of dual sovereignty.

2. Defendants also contend that this criminal prosecution constitutes an excessive punishment which violates the Eighth Amendment even if it is not prohibited by the Double Jeopardy Clause.

## CONCLUSION

For the foregoing reasons the motions of defendants Billy Ray Collins and Sheila Roberts to dismiss the indictment are denied.

Based on the present record I am unable to conclude that the forfeitures in this case were so excessive as to bar any further punishment through criminal prosecution.