UNITED STATES of America

v.

Brian BROPHIL.

No. Crim. A. 90–18–05.

United States District Court,
D. Vermont.

Sept. 27, 1995.

1258

Peter W. Hull, Assistant U.S. Attorney, Burlington, VT, for United States.

Peter W. Hall, Reiber, Kenland, Schwiebert, Hall and Facey, Rutland, VT, for defendant.

## ORDER

BILLINGS, Senior District Judge.

The following Motions bring this matter to the Court's attention:

1.  Defendant Brian Brophil's Motion for New Trial and Hearing and Reconsideration dated August 16, 1995; and

2.  Defendant Brian Brophil's Motion to Supplement the Record dated August 16, 1995.

The United States has filed opposition to both the Motion for Reconsideration [1] and the Motion to Supplement. After reviewing the factual and procedural background, the Court will address each of the Motions seriatim.

### I. FACTUAL BACKGROUND

On February 13, 1990, members of the Northern Vermont Drug Task Force, the Vermont State Police and the Drug Enforcement Administration executed a search warrant at Brian Brophil's residence and barn, located in West Glover, Vermont. During the search, these agents found an extensive marijuana growing operation. The agents seized approximately 1,403 marijuana plants as well as paraphernalia used in marijuana

---

1. The United States correctly points out that there cannot be a Motion for a New Trial where, as here, there was not a trial in the first place. Despite the manner in which the Defendant has captioned his filing, however, it is clear that its purpose is to urge the Court to reconsider our Order of August 8, 1995. We will therefore treat Defendant's Combined Motion for New Trial and Hearing and Reconsideration as a Motion for Reconsideration.

cultivation. These events gave rise to the commencement of criminal and civil proceedings against Brophil.

The criminal proceeding commenced on February 14, 1990, when Magistrate Judge Jerome J. Niedermeier issued a Criminal Complaint against Brophil. The Criminal Complaint was based on the Affidavit of George Contois, a Sergeant with the Vermont State Police. A five-count Superseding Indictment was filed on August 30, 1990. On September 13, 1990, Brophil failed to appear for his arraignment. The Court issued a warrant for his arrest, but Brophil could not be located.

On February 15, 1990, the day after Magistrate Judge Niedermeier issued the criminal complaint, the Government filed a civil forfeiture complaint against the Defendant's property in Glover. *United States v. 31 Acres in Glover, Vermont,* No. 90–CV–48 (D.Vt. filed Feb. 15, 1990). The civil forfeiture action was filed by Assistant United States Attorney James J. Gelber. Pursuant to 21 U.S.C. § 881(a)(7), the federal government sought the forfeiture of property which was allegedly used to facilitate the violation of the Controlled Substances Act.[2] Because the Defendant was a fugitive, the forfeiture case proceeded in his absence. No trial was held. On January 30, 1991, United States District Court Judge Albert Coffrin entered a final Order of Forfeiture.

Brophil was apprehended in California on December 20, 1993, nearly three years after the forfeiture of his property. On November 10, 1994, Brophil entered into a Memorandum of Agreement with the Government pursuant to which he agreed to plead guilty to one count of marijuana manufacture in violation of 21 U.S.C. § 841(a)(1).

Shortly before his sentencing, on June 15, 1995, the Defendant filed a Motion to Dismiss Defendant's Criminal Case on the Basis of Double Jeopardy. Because the Government did not have adequate time to respond to Defendant's Motion prior to the scheduled date for sentencing, the Court proceeded to sentence Brophil and advised the parties that it would consider Defendant's Motion to Dismiss upon receipt of the Government's response.

On June 20, 1995, the Court sentenced Defendant Brian Brophil for the offense of manufacture, possession with intent to manufacture, and possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1).[3] Brophil received a prison term of 151 months, to be followed by a five year term of supervised release.

On August 8, 1995, after the Government responded to the double jeopardy argument, the Court denied the Defendant's Motion to Dismiss. Relying principally on *United States v. Torres,* 28 F.3d 1463 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 669, 130 L.Ed.2d 603 (1994), the Court concluded that Brophil had never been placed in jeopardy because he had never appeared as a party at the forfeiture proceeding. *United States v. Brophil,* 894 F.Supp. 166, 169 (D.Vt.1995). Because we found that he had not been placed in jeopardy, the Court held that the Double Jeopardy Clause was inapplicable to Brophil's case. *Id.* at 170.

In his Motion for Reconsideration, the Defendant continues to argue that his Fifth Amendment rights were violated when the Government seized his property in a civil forfeiture proceeding and later prosecuted him criminally. According to the Defendant, the Government violated the Double Jeopar-

---

**2.** Section 881(a)(7) provides, in pertinent part:

The following shall be subject to forfeiture to the United States and *no property right shall exist in* them:

. . . . .

(7) All real property ... which is used, or intended to be used, in any manner or part, to *commit, or to facilitate the commission of a* violation of this subchapter punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an

owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

**3.** Section 841(a)(1) provides:

(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.

dy Clause because it used separate proceedings to punish him twice for the same offense of marijuana cultivation. The Defendant therefore urges the Court to reexamine our reliance on *Torres*, and to instead conclude that the Double Jeopardy Clause bars the criminal charges against him.

The United States maintains that Brophil's failure to appear at the forfeiture proceeding precludes him from claiming that the Double Jeopardy Clause prevents the Government from pursuing criminal charges against him. The Government takes the position that the Court correctly followed *Torres* when we held that Brophil incurred no jeopardy from the forfeiture proceeding because he chose not to appear at it. We cannot agree.

■ After a thorough examination of the analytical bases for the Seventh Circuit's decision in *Torres*, the Court concludes that our reliance on that case was erroneous.[4] For the reasons that follow, the Court now holds that the Government's criminal prosecution of the Defendant after having previously seized his residence in a civil forfeiture proceeding is barred by the Double Jeopardy Clause of the Fifth Amendment.

## II. DISCUSSION

### A. MOTION TO DISMISS ON DOUBLE JEOPARDY GROUNDS

■ The Fifth Amendment to the United States Constitution provides that: "No person shall ... be subject for the same offence to be twice put in jeopardy of life or limb...." U.S. Const. amend. V. The Dou-

ble Jeopardy Clause rests on the premise that an individual should not be required to defend him or herself more than once against charges based on the same alleged criminal conduct. *Abbate v. United States*, 359 U.S. 187, 198–99, 79 S.Ct. 666, 672–73, 3 L.Ed.2d 729 (1959) (opinion of Brennan, J.). The United States Supreme Court has consistently held that the clause prohibits three distinct government actions: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. *Department of Revenue of Mont. v. Kurth Ranch*, —— U.S. ——, ——, 114 S.Ct. 1937, 1945, 128 L.Ed.2d 767 (1994); *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). *See also United States v. Amiel*, 995 F.2d 367, 369 (2d Cir.1993). Brophil's claim arises under the latter of these three protections; he alleges that the Government's prosecution of both a civil forfeiture action and a criminal prosecution against him constituted multiple punishments for the same offense.

■ When analyzing a claim under the Double Jeopardy Clause, the court must first determine whether the Clause applies at all. In order for the Clause to come into play, the first proceeding against a defendant must have put him or her in jeopardy. *Serfass v. United States*, 420 U.S. 377, 393, 95 S.Ct. 1055, 1065, 43 L.Ed.2d 265 (1975) ("an individual must suffer jeopardy before he can suffer double jeopardy"). If the first proceeding placed the defendant in jeopardy, the court must then consider whether the second

**4.** The correctness of the *Torres* holding has been the subject of some debate. Some courts have followed the decision, *see, e.g., United States v. Baird*, 63 F.3d 1213 (3d Cir.1995); *United States v. Walsh*, 873 F.Supp. 334, 337 (D.Ariz.1994), *United States v. Branum*, 872 F.Supp. 801, 803 (D.Or.1994); *United States v. Kemmish*, 869 F.Supp. 803, 805–06 (S.D.Cal.1994), although not without dissent. *See Baird*, 63 F.3d at 1219–27 (Sarokin, J., dissenting). Other courts, however, have declined to follow *Torres*. *See, e.g., United States v. Aguilar*, 886 F.Supp. 740, 743 n. 3 (E.D.Wash.1994); *United States v. Ailemen*, 893 F.Supp. 888 (N.D.Cal.1995); *United States v. Plunk*, No. A94–036 (JWS) (D.Alaska, Nov. 4, 1994); *United States v. Sanchez–Cobarruvias*, No. 94–0732–IEG (S.D.Cal., October 13, 1994). The Court recognizes that the latter cases may now

have less force because the Ninth Circuit recently held that a criminal prosecution following an uncontested administrative forfeiture does not violate the Double Jeopardy Clause. *United States v. Cretacci*, 62 F.3d 307, 309 (9th Cir. 1995). On the other hand, *Cretacci* may be distinguishable because it involved the administrative forfeiture proceedings of 19 U.S.C. §§ 1602–1618 rather than the civil forfeiture proceedings of § 881 that are at issue here. *Baird*, 63 F.3d at 1216–18. At any rate, irrespective of whether they follow *Torres* or not, these cases are consulted for guidance only. Because none of them are binding upon this Court, and because the Second Circuit has not yet taken a position on the issue, we are free to reach our own conclusion regarding the strength or weakness of the *Torres* court's decision.

proceeding exposed him to multiple punishment in violation of the Double Jeopardy Clause. Under the United States Supreme Court's decisions in *Kurth Ranch* and in *United States v. Halper* 490 U.S. 435, 436, 109 S.Ct. 1892, 1895, 104 L.Ed.2d 487 (1989), a two-step analysis is required to determine whether the Government has subjected a defendant to multiple punishment by instituting both a criminal prosecution and a civil forfeiture proceeding: (1) whether the civil forfeiture action and the claimant's criminal prosecution constituted "separate proceedings;" and (2) whether the civil forfeiture constitutes a "punishment." *United States v. $405,089.23 U.S. Currency,* 33 F.3d 1210, 1216 (9th Cir.1994), *opinion amended on denial of reh'g,* 56 F.3d 41 (1995).; *United States v. Ursery,* 59 F.3d 568, 573 (6th Cir. 1995).

With this analytical framework in mind, we turn first to the question of whether the civil forfeiture proceeding subjected Brophil to jeopardy, thereby invoking the protections of the Double Jeopardy Clause.

### 1. Applicability of the Double Jeopardy Clause

In our Order dated August 8, 1995, the Court never reached the substance of Brophil's double jeopardy claim because we held that the Clause did not apply to this situation. Relying on *Torres,* we held that Brophil's failure to appear at the forfeiture proceeding meant that the forfeiture action never actually threatened him with jeopardy. Since jeopardy did not attach to the first proceeding, we concluded that the Government's criminal prosecution of Brophil did not implicate the Double Jeopardy Clause.

After further review of the matter, the Court now finds that the better position is to reject the *Torres* court's theory that failure to appear at a civil forfeiture proceeding precludes a defendant from raising a double jeopardy claim during a subsequent criminal prosecution. The Court reaches this conclusion for two reasons: (1) although *Torres,* like the present case, was a multiple punishment case, the *Torres* court relied upon an analytically distinct successive prosecution case to establish its civil forfeiture rule; and (2) the *Torres* decision runs counter to recent United States Supreme Court authority. Each of these reasons is explained more fully below.

a. *Torres* Fails to Consider the Distinction Between Multiple Punishment and Successive Prosecution Under the Double Jeopardy Clause.

In *Torres,* the court relied on *Serfass v. United States,* 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975), to support its conclusion that a defendant is not placed in jeopardy if he fails to appear as a party at a civil forfeiture proceeding. 28 F.3d at 1463. *Serfass,* however, was a successive prosecution case, while *Torres* was a multiple punishment case like the Brophil matter currently before us. *See Baird,* 63 F.3d at 1224 (Sarokin, J. dissenting) (for double jeopardy claims arising out of forfeiture proceedings and criminal prosecutions, "(t)he issue is ... whether defendant is at risk of being twice punished for the same offense, not whether defendant is at risk of being twice tried"). Further analysis of *Serfass* indicates that it is grounded on reasoning which does not apply to multiple punishment cases like those of *Torres* and Brophil.

In *Serfass* the Supreme Court held that the Double Jeopardy clause did not bar an appeal by the Government under the Criminal Appeals Act, 18 U.S.C. § 3731, from a trial court's pre-trial dismissal of an indictment. 420 U.S. at 394, 95 S.Ct. at 1065.[5] The Court based this holding on the finding that the constitutional policies underlying the Double Jeopardy Clause were not implicated, and jeopardy had not attached, because the defendant had not yet been put to trial. *Id.* at 390–91, 95 S.Ct. at 1063–64. With reference to these policies, the Court explained that the pre-trial nature of the dismissal meant that the defendant was not " 'subjected to the hazards of trial and possible conviction,' " *id.* at 391, 95 S.Ct. at 1064 (quoting *Green v. United States,* 355 U.S. 184, 187, 78

---

**5.** Thus, *Serfass* concerned the constitutionality of the successive prosecution of a defendant under the same charges rather than of multiple punishments under different charges for the same offense.

**1262**

S.Ct. 221, 223, 2 L.Ed.2d 199 (1957)), and that an appeal would not " 'allow the prosecutor to seek to persuade a second trier of fact of the defendant's guilt after having failed with the first.'" *Id.* (quoting *United States v. Wilson,* 420 U.S. 332, 352, 95 S.Ct. 1013, 1026, 43 L.Ed.2d 232 (1975)). Although these policies serve multiple prosecution cases well, they are inapplicable to multiple punishment cases such as those involving civil forfeitures.

█ In the first place, the civil forfeiture proceeding in the present case was not dismissed prior to resolution on the merits like the first prosecution was in *Serfass.* As a result, the Supreme Court's reliance on the fact that Serfass was not "subjected to the hazards of trial and possible conviction" is not germane to Brophil's case. A property owner in a civil forfeiture case is not on trial and is never subject to possible criminal conviction. The proceeding does, however, subject the property owner to the hazards of forfeiture, regardless of whether or not he appeared as a party. Because the Supreme Court has held that such civil forfeiture proceedings do constitute punishment, *Austin v. United States,* — U.S. —, —, 113 S.Ct. 2801, 2810, 125 L.Ed.2d 488 (1993); *Kurth Ranch,* — U.S. at —, 114 S.Ct. at 1945, the protections of the Double Jeopardy Clause should apply to one like Brophil whose property the Government has seized in that manner.[6]

The *Serfass* Court also relied heavily on the point that permitting the appeal of a pretrial dismissal would not allow the prosecutor to seek to persuade a second trier of fact of the defendant's guilt after having failed with the first. Again, that concern is simply not implicated here because this is a multiple punishment case rather than one of successive prosecution. A civil forfeiture proceeding is not an attempt to persuade a trier of fact of the defendant's guilt in the first place, so there is no danger that the prosecutor would be attempting to do so again in a subsequent criminal action. Rather, as we

have stressed, the concern here is about multiple punishments for the same offense, and this danger is especially clear where the Government uses the same illegal conduct to impose criminal punishment in one proceeding and civil penalties in another.

Based upon the successive prosecution policies described above, the Supreme Court in *Serfass* concluded that jeopardy does not attach without risk of a determination of guilt, and that the Double Jeopardy Clause "does not come into play until a proceeding begins before a trier 'having jurisdiction to try the question of the guilt or innocence of the accused.'" 420 U.S. at 391–92, 95 S.Ct. at 1064 (quoting *Kepner v. United States,* 195 U.S. 100, 133, 24 S.Ct. 797, 806, 49 L.Ed. 114 (1904)). This holding is thoroughly logical for successive prosecution cases like *Serfass,* but it makes little sense in civil forfeiture cases like Brophil's because they are typically in rem actions against the property itself, and the court has no authority to try the guilt or innocence of the property-owner.

The statements from *Serfass* cited above seem to suggest that the Double Jeopardy Clause would be inapplicable in civil forfeiture cases. However, it is clear from the Supreme Court's recent rulings that the Clause in fact does apply to such actions. *See Halper,* 490 U.S. at 448–49, 109 S.Ct. at 1901–02 (civil fine and forfeiture can constitute punishment within meaning of Double Jeopardy Clause); *Kurth Ranch,* — U.S. at —, 114 S.Ct. at 1945 (financial penalty in civil proceeding is a separate punishment for double jeopardy purposes from a criminal prosecution for the same offense). Since the Supreme Court was surely mindful of its own prior holding in *Serfass* when it decided *Halper* and *Kurth Ranch,* the proper conclusion for precedential purposes is one that reconciles the continued validity of each case. In our opinion, the cases are clearly consistent when it is recognized that *Serfass* applied to successive prosecution cases while *Halper* and *Kurth Ranch* apply to multiple punishment cases.

---

6. Based on the Supreme Court's ruling in *Halper* and *Austin,* at least two circuit courts of appeal have determined that separate civil forfeiture and criminal proceedings against a Defendant may constitute double jeopardy. *See Ursery,* 59 F.3d at 571; *$405,089.23 U.S. Currency,* 33 F.3d at 1216.

As this discussion has shown, neither the policies nor the conclusion of the *Serfass* decision have any application in the civil forfeiture context. If these were the only policies behind the protection against double jeopardy, then the Supreme Court would not have held that the Double Jeopardy Clause does apply to civil forfeiture proceedings. Therefore, since the Court did hold that the Clause applies to civil forfeiture proceedings, it can only be because of policies and legal principles other than those relied upon by the Court in *Serfass*. Indeed, the Court demonstrated this quite forcefully in *Halper*, 490 U.S. at 440–42, 447, 109 S.Ct. at 1897–99, 1901, when it discussed at length the unique history, jurisprudence and policy behind the Double Jeopardy Clause's protection against multiple punishments for the same offense. This approach is analytically consistent with the established principle that multiple prosecutions and multiple punishments are distinct harms prohibited by the Double Jeopardy Clause, and it buttresses our opinion that the *Torres* court incorrectly imported multiple prosecution policies from *Serfass* to support an unrelated rule for multiple punishment cases. As our analysis suggests, the *Torres* court's use of *Serfass* in this manner does not withstand careful scrutiny. *See also*, 1 David B. Smith, *Prosecution and Defense of Forfeiture Cases*, 12.10 at 12–141 n. 33.1 (1995) ("To the extent that *Torres* may rest on the notion that an uncontested administrative forfeiture cannot place the owner 'in jeopardy,' it is probably incorrect").

██ The Supreme Court's holding in *Serfass* that the pre-trial dismissal of an indictment does not expose a defendant to jeopardy in a successive prosecution case does not compel the conclusion that the failure to appear at a civil forfeiture proceeding waives the right to double jeopardy protection in a multiple punishment case. *See Baird*, 63 F.3d at 1224 (Sarokin, J., dissenting) (*Serfass* "did not involve a 'multiple punishments' claim and does not stand for the proposition that multiple judicial proceedings are a precondition to all double jeopardy claims"). The *Serfass* Court noted that its holding was limited to the Criminal Appeals Act, 420 U.S. at 394, 95 S.Ct. at 1065, and, as we have shown here, the legal principles on which it is

based provide no support for extending it to civil forfeiture actions under § 881. Further, expanding *Serfass* beyond its logical moorings evades the Supreme Court's decisions in *Halper* and *Kurth Ranch*, and it creates limits on the holdings of those cases that are inconsistent with the analysis that the Court employed to decide them. We therefore disagree with the *Torres'* court's decision to extend *Serfass* in this manner, and we decline to do so here.

### b. *Torres* Runs Counter to Supreme Court Authority

As indicated above, the *Torres'* court's extension of *Serfass* to multiple punishment cases is inconsistent with recent Supreme Court decisions. In addition, the Supreme Court's holdings in these decisions suggest a particular analysis for multiple punishment cases that examines the nature of the Government's action against the accused to determine the applicability of the Double Jeopardy Clause. By neglecting this approach and instead focussing on the character of the underlying proceeding, the *Torres* court overlooked the teachings of cases such as *Halper*, *Austin* and *Kurth Ranch*.

*Halper* involved a defendant whom the Government first sentenced under the criminal false-claims statute and later fined under the civil False Claims Act. 490 U.S. at 437–38, 109 S.Ct. at 1895–96. The case therefore concerned multiple punishment, and the Supreme Court explained in detail the historical roots of the protection against multiple punishment and its development in the Court's jurisprudence as a distinct harm proscribed by the Double Jeopardy Clause. *Id.* at 440–442, 109 S.Ct. at 1897–99. The Court then rejected the Government's argument that punishment occurs only in criminal proceedings, finding that such an approach was "not well suited to the context of the 'humane interests' safeguarded by the Double Jeopardy Clause's proscription of multiple punishments." *Id.* at 447, 109 S.Ct. at 1901 (citing *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 554, 63 S.Ct. 379, 389, 87 L.Ed. 443 (1943) (Frankfurter, J. concurring)). Thus the Court affirmed that the multiple punish-

ment arm of the Clause has its own particular policy justification.

The Court went on to determine that a particular analytical test applied to multiple punishment situations as well. Under this test, a violation of the protection from multiple punishments can be "identified only by assessing the character of the actual sanctions imposed on the individual by the machinery of the state." *Id.* at 447, 109 S.Ct. at 1901. *See also, id.* at n. 7 ("in determining whether a particular civil sanction constitutes criminal punishment, it is the purposes actually served by the sanction in question, not the underlying nature of the proceeding giving rise to the sanction, that must be evaluated"). For purposes of assessing the character of the sanction, the court held that "a civil sanction that cannot fairly be said to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term." *Id.* at 448, 109 S.Ct. at 1902.

The Supreme Court expressly acknowledged in *Halper* that the Double Jeopardy Clause's protection from multiple punishments has its own unique policy basis and its own particular legal test designed to safeguard that policy. Both of these lessons were lost on the *Torres* court, which applied successive prosecution policies to a multiple punishment case and analyzed the nature of the forfeiture proceeding rather than the character of the sanctions that the forfeiture imposed. This analytical flaw may serve to explain how the *Torres* court reached a conclusion that seems to defy common sense: that the Government's seizure of $60,000 from Torres did not punish him simply because he did not appear as a party at the forfeiture proceeding.[7]

In its subsequent double jeopardy cases, the Supreme Court has consistently applied the *Halper* analysis to multiple punishment situations. In *Kurth Ranch,* for example, Montana law authorized a tax on illegal drugs in addition to the criminal prosecution that a person in possession of the drugs would face. The Supreme Court did not analyze the nature of the administrative proceeding used to collect the tax or the significance of the defendants' appearance at it. Instead, the Court examined the character of the tax itself, and concluded that it constituted punishment under the Double Jeopardy Clause. *Id.* at ——–——, 114 S.Ct. at 1945–48. Similarly, in *Witte v. United States,* —— U.S. ——, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995), the defendant claimed that his double jeopardy rights were violated when a court convicted and sentenced him for conduct that the court had previously considered when it applied the United States Sentencing Guidelines to sentence him for a prior conviction. Again, the Court did not analyze the nature of the sentencing proceeding itself. Rather, the Court examined the character of the first sentence, and of the sentencing court's consideration in it of the conduct for which the defendant was later separately convicted, and concluded that the defendant had not been punished twice for that conduct. *Id.* at ——–——, 115 S.Ct. at 2204–09. The *Kurth Ranch* and *Witte* decisions make clear that the Supreme Court has not strayed from the principles it established in *Halper,*[8] and that the *Torres* court's decision to do so was erroneous.

■ Finally, the Court notes that *Torres* is at odds with the Supreme Court's efforts in recent years to reiterate that the constitution places limits on the·Government's sei-

---

7. The *Torres* court found it significant that there was no way to be sure that the money actually belonged to the defendant because he had not made a claim at the forfeiture proceeding. 28 F.3d at 1465–66. *See also, Amiel* 995 F.2d at 371–72 (double jeopardy claim not yet ripe where it is unclear whether defendant has legitimate claim to seized properties). This potential problem is not an issue in the present case because Brophil's deed to the property, which was recorded in the Town of Glover land records, provided notice of his ownership of the parcel.

In addition, the Government's forfeiture complaint expressly acknowledged that the property belonged to Brophil. It was therefore clear at the time of the forfeiture proceeding that the Defendant had a legitimate claim to the seized property.

8. Although Justice Scalia has urged reconsideration of *Halper, see Kurth Ranch,* —— U.S. at ——, 114 S.Ct. at 1937 (Scalia, J., dissenting); *Witte,* —— U.S. at ——, 115 S.Ct. at 2209 (Scalia, J. dissenting), the Court has declined to do so.

zure of private property pursuant to the asset forfeiture laws. As we have seen, the *Austin* Court held that such seizures are limited by the Excessive Fines Clause of the Eighth Amendment, and the Court in *Kurth Ranch* held that the Double Jeopardy Clause places some strictures upon the manner in which the Government may use the asset seizure statutes. Observing that the asset seizure statute marked a serious expansion of governmental power, the Court also held that an owner's lack of knowledge that her home had been purchased with the proceeds of illegal drug transactions constitutes a defense to a forfeiture proceeding under the statute. *United States v. 92 Buena Vista Ave.*, 507 U.S. 111, —— – ——, 113 S.Ct. 1126, 1133–37, 122 L.Ed.2d 469 (1993). In addition, the Court has held that the Due Process Clause of the Fifth Amendment prohibits the Government from seizing real property in a civil forfeiture case without first affording the owner notice and an opportunity to be heard. *United States v. James Daniel Good Real Property*, —— U.S. ——, ——, 114 S.Ct. 492, 505, 126 L.Ed.2d 490 (1993). In *James Daniel*, the Supreme Court emphasized that Government property seizures under the asset forfeiture laws must be scrutinized particularly closely because of the Government's direct pecuniary interest in the outcome of the proceeding. *Id.* at ——,

114 S.Ct. at 502. *See also, id.* at ——, 114 S.Ct. at 515 (Thomas, J., concurring in part and dissenting in part) (current Government practice under § 881 is so far removed from the central theory behind in rem forfeiture that the Court may need to reevaluate its previously deferential approach to legislatures in this area).[9] The concerns that the Court made explicit in *James Daniel*, and which are implicit in *Austin*, *Kurth Ranch* and *Buena Vista*, clearly indicate that the Court sought with these cases to reaffirm the constitutional safeguards against Government abuse of the civil forfeiture statutes. By essentially carving an unwarranted exception into *Kurth Ranch*, the *Torres* court ignored the Supreme Court's efforts in this area to insure that all citizens are constitutionally protected from unwarranted Government seizures of private property.[10]

■ As this discussion has demonstrated, *Torres* is supported neither by *Serfass* nor by more recent Supreme Court decisions. In fact, the Supreme Court's opinions in *Halper*, *Kurth Ranch* and *Witte* suggest that the *Torres* court improperly based its analysis on the nature of the underlying proceeding rather than on the character of the Government action against the defendant. Further, *Torres* cuts against the tide of recent Supreme Court rulings that clearly seek to create safeguards against Government misuse of the

9. The Second Circuit has expressed similar concern. *See United States v. All Assets of Statewide Auto Parts, Inc.*, 971 F.2d 896, 905 (2d Cir.1992) ("We continue to be enormously troubled by the government's increasing and virtually unchecked use of the civil forfeiture statutes and the disregard for due process that is buried in those statutes").

10. It is true, of course, that this case is unusual because the forfeiture proceeding occurred before the criminal prosecution. However, as Justice Scalia observed, "if there is a constitutional prohibition on multiple punishments, the order of punishment cannot possibly make any difference." *Kurth Ranch*, —— U.S. at ——, 114 S.Ct. at 1959 (Scalia, J., dissenting). *See also, Ursery*, 59 F.3d at 576 (reversing criminal conviction on double jeopardy grounds because defendant had already been punished by civil forfeiture proceeding); *United States v. Mayers*, 897 F.2d 1126, 1127 (11th Cir.) (per curiam) ("the *Halper* principle that civil penalties can sometimes constitute criminal punishment for double jeopardy purposes would seem to apply whether the civil

penalties come before or after the criminal indictment"), *cert. denied*, 498 U.S. 865, 111 S.Ct. 178, 112 L.Ed.2d 142 (1990); *United States v. Austin*, 54 F.3d 394, 399 (7th Cir.1995) (jeopardy may attach when civil punishment precedes a criminal trial); *United States v. McCaslin*, 863 F.Supp. 1299, 1306–07 (W.D.Wash.1994) (vacating conviction on double jeopardy grounds because defendant had previously been punished when the government seized his property pursuant to § 881(a)(7)); *United States v. Marcus Schloss & Co.*, 724 F.Supp. 1123, 1126 (S.D.N.Y. 1989) (exacting civil sanction "before imposition of criminal punishment should have the same double jeopardy effect as exaction afterwards"). Although, this question has not yet been resolved by either the Supreme Court, *Kurth Ranch*, —— U.S. at ——, 114 S.Ct. at 1959 (Scalia, J., dissenting), or by the Second Circuit, *Amiel*, 995 F.2d at 370, we conclude that Justice Scalia's approach is the most sensible one, since otherwise the Government or a defendant could attempt to alter the order of the two proceedings merely to manipulate the application of the Double Jeopardy Clause.

asset forfeiture laws. By removing rather than reaffirming those safeguards, *Torres* undermines the Supreme Court's goals in this area. For these reasons, we decline to follow the *Torres* per se rule that jeopardy never attaches when a defendant fails to appear at a civil forfeiture proceeding. Instead, at least until the Second Circuit or the Supreme Court indicates otherwise, this Court will continue in multiple punishment cases to analyze each case individually in order to determine whether the Government has used separate proceedings against a defendant to impose multiple punishments for the same offense. We now turn to that analysis.

### 2. Substantive Double Jeopardy Analysis

Having rejected the *Torres* per se rule as inapplicable to multiple punishment situations such as this one, we must now determine whether the Government violated the Double Jeopardy Clause by prosecuting Brophil criminally after seizing his property three years earlier. As we indicated earlier, resolving the question of whether the Government violated the Double Jeopardy Clause by maintaining both a criminal prosecution and a civil forfeiture proceeding for the same offense requires a two-step analysis: (1) whether the civil forfeiture action and the claimant's criminal prosecution constituted "separate proceedings;" and (2) whether the civil forfeiture constitutes a "punishment." *$405,089.23 U.S. Currency*, 33 F.3d at 1216. When this test is applied to the present case, it is readily apparent that the Government's criminal prosecution of Brophil is barred by the Double Jeopardy Clause.

### a. The Civil Forfeiture Action and the Criminal Prosecution Are Separate Proceedings

It is clear under *Kurth Ranch* that a civil proceeding to collect a monetary penalty for a crime and a separate criminal prosecution for the same crime constitute separate proceedings for purposes of the Double Jeopardy Clause. —— U.S. at ——, 114 S.Ct. at 1948. Several Circuit Courts of Appeal have also held that *Kurth Ranch* compels this conclusion. *See, e.g.*, *$405,089.23*, 33 F.3d at 1218 ("a civil forfeiture action which is

brought and tried separately from a criminal prosecution and is based upon the same offense constitutes a separate 'proceeding' "). *See also, Torres*, 28 F.3d at 1465; *Ursery*, 59 F.3d at 574–76.

In the present case, there can be no doubt that the civil forfeiture action and the criminal prosecution of Brophil were separate proceedings. The criminal proceeding commenced on February 14, 1990, before Magistrate Judge Jerome J. Niedermeier; the civil count was filed under a separate docket number the following day with the District Court rather than with the magistrate. On January 30, 1991, United States District Court Judge Albert Coffrin entered a final Order of Forfeiture. After entering a plea agreement to the criminal charge on November 10, 1994, Brophil was sentenced by this Court on June 20, 1995. As these facts indicate, the forfeiture action and the criminal prosecution against Brophil were "two separate actions, one civil and one criminal, instituted at different times, ... [resolved] at different times before different factfinders, presided over by different district judges, and resolved by separate judgments." *$405,089.23*, 33 F.3d at 1218. *See also, Ursery*, 59 F.3d at 575 (finding separate proceedings where civil forfeiture proceeding and criminal prosecution were instituted at different times, presided over by different district judges, and resolved by separate judgments).

The Court recognizes that the Second Circuit has held that a criminal prosecution and a civil forfeiture proceeding may not necessarily be separate proceedings within the meaning of the Double Jeopardy Clause. *United States v. Millan*, 2 F.3d 17, 20 (2d Cir.1993), *cert. denied sub nom. Bottone v. United States*, —— U.S. ——, 114 S.Ct. 922, 127 L.Ed.2d 215 (1994). However, *Millan* was decided before the Supreme Court issued its opinion in *Kurth Ranch*, and it seems very likely that the latter decision calls into question the continued validity of the former. *McCaslin*, 863 F.Supp. at 1304–05. Nevertheless, we will apply *Millan* here because the Second Circuit has not yet expressly ruled that it has been limited by *Kurth Ranch*.

In *Millan*, the Second Circuit relied on four factors to support its conclusion that the civil seizure and criminal persecution in that particular case were effectively the same proceeding:

(1) both the civil and criminal actions were commenced on the same day, by the same judge, based on the same affidavit by the DEA agent;

(2) the seized properties named the civil forfeiture suit were also subject to a restraining order in the criminal indictment;

(3) the civil forfeiture complaint incorporated the criminal indictment; and

(4) the defendants were aware of the criminal charges against them when they voluntarily entered into the stipulation forfeiting their property.

2 F.3d at 20. None of these factors are present in Brophil's case.

First, the civil and criminal actions began on different days and they were not based on the same affidavit. Vermont State Police Sergeant George Contois filed the criminal complaint against Brophil on February 14, 1990, and it was based upon Contois' own sworn affidavit. The civil forfeiture action, on the other hand, was filed by Assistant United states Attorney James J. Gelber on February 15, 1990. Second, the seized property in Glover that was the subject of the civil forfeiture action was the subject of neither a restraining order nor of any other criminal action in the Grand Jury Indictment.[11] Third, the Government did not incorporate the criminal indictment into the civil forfeiture complaint.[12] Finally, unlike the defendants in *Millan*, Brophil never stipulated to the forfeiture of his property.[13]

■ As this discussion demonstrates, none of the factors relied on by the *Millan* court exist in the present case. Rather, as we indicated above, the criminal prosecution and

the forfeiture proceeding were two distinct actions, one civil and one criminal, instituted at different times by different persons, resolved three years apart by completely different tribunals with different district judges, and finalized by separate judgments. Under these circumstances, the civil forfeiture and the criminal prosecution are clearly separate proceedings, and finding otherwise would "contradict controlling Supreme Court precedent as well as common sense." *$405,089.23*, 33 F.3d at 1218.

b. The Civil Forfeiture Action Constitutes Punishment for Double Jeopardy Purposes

■ Supreme Court precedent firmly establishes that civil forfeiture of the type disputed here constitutes punishment within the meaning of the Double Jeopardy Clause. In *Halper*, the Court held that a sanction qualifies as punishment for double jeopardy purposes if the sanction "may not fairly be characterized as remedial, but only as a deterrent or retribution." 490 U.S. 435, 448–49, 109 S.Ct. 1892, 1902, 104 L.Ed.2d 487 (1989). Thus, under *Halper*, a nonremedial civil penalty does constitute punishment. *Kurth Ranch*, —— U.S. at ——, 114 S.Ct. at 1945. In *Austin*, the Supreme Court determined that forfeiture pursuant to 21 U.S.C. § 881(a)(7), the statute employed by the Government here, serves as punishment for purposes of the Excessive Fines Clause of the Eighth Amendment. —— U.S. at ——, 113 S.Ct. at 2812 (1993). In reaching that conclusion, the Court explained that because § 881(a)(7) " 'can only be explained as also serving either retributive or deterrent purposes, [it] is punishment, as we have come to understand the term.' " *Id.* (quoting *Halper*, 490 U.S. at 448, 109 S.Ct. at 1902). *See also*, *id.* at ——, 113 S.Ct. at 2811 ("legislative

---

11. The indictment only mentioned the Glover property in passing, and there was no indication that forfeiture proceedings were contemplated. *See* Defendant's Reply to United States' Memorandum in Opposition to Defendant's Motion to Dismiss, July 31, 1995, Attachment C.

12. In fact, the civil forfeiture complaint of February 15 makes no mention of the criminal indictment whatsoever, despite the fact that the Magis-

trate had issued the criminal complaint the day before.

13. It is of course true that Brophil was aware of the criminal charges against him when the property was seized, but by itself "(t)his similarity is insufficient to warrant application of *Millan's* holding to the instant case." *Ursery*, 59 F.3d at 575.

history of section 881 confirms the punitive nature of these provisions"); *Ursery,* 59 F.3d at 573 ("under *Halper* and *Austin,* any civil forfeiture under § 21 U.S.C. § 881(a)(7) constitutes punishment for double jeopardy purposes"); *McCaslin,* 863 F.Supp. at 1306 (taken together, *Austin* and *Halper* establish that a property forfeiture under § 881(a)(7) is a punishment for double jeopardy purposes). Thus, since section 881(a)(7) serves nonremedial purposes of retribution and deterrence, civil forfeiture actions under the statute constitute punishment within the meaning of the Double Jeopardy Clause. Because the Government seized Brophil's property pursuant to § 881(a)(7), the civil forfeiture action punished Brophil for purposes of double jeopardy.

As this discussion has demonstrated, the Government first punished Brophil when it seized his property in a civil forfeiture proceeding in 1991 because he had grown marijuana on it. By criminally prosecuting Brophil three years later for the same marijuana cultivation activity, the Government has used two separate proceedings to impose multiple punishments on Brophil for a single offense. Since this is precisely what the Double Jeopardy Clause forbids, the Government's criminal charges against Brophil must be dismissed.

■ The Court does not take lightly either the dismissal of criminal charges against a defendant or the significant efforts undertaken by the Government to reduce drug abuse in this country. However, the protections of the Constitution apply to all citizens, and the constitution must never be made a casualty of the Government's war on drugs. *United States v. Lasanta,* 978 F.2d 1300, 1305 (2d Cir.1992). Because the Government's criminal prosecution of Brophil violated the Double Jeopardy Clause of the Fifth Amendment, Defendant Brian Brophil's Motion for Reconsideration is hereby GRANTED, and the criminal charges against him are DISMISSED.

### B.  MOTION TO ENSURE COMPLETENESS OF THE RECORD

Defendant Brophil has also moved the Court to include the record of the civil forfei-

ture action as part of the record in the present criminal case. Because Defendant's criminal claims rely extensively on the civil proceeding, the Court finds that expanding the record in this manner will serve the efficient administration of justice. Consequently, Defendant Brian Brophil's Motion to Ensure Completeness of the Record is hereby GRANTED. Further, the Court ORDERS that the record in the matter of *United States v. 31 Acres in Glover, Vermont,* No. 90–CV–48, shall be incorporated into the record of the present case.

### III.  CONCLUSION

Based upon the foregoing, the Court hereby:

1. GRANTS Defendant Brian Brophil's Motion for Reconsideration and DISMISSES the criminal charges against him; and

2. GRANTS Defendant Brian Brophil's Motion to Ensure Completeness of the Record and ORDERS that the record in the matter of *United States v. 31 Acres in Glover, Vermont,* No. 90–CV–48, be incorporated into the record of the present case.

SO ORDERED.