**UNITED STATES of America, Appellee,**

v.

**Kemi IDOWU, Defendant–Appellant.**

**No. 307, Docket 95–1110.**

United States Court of Appeals, Second Circuit.

Argued Oct. 13, 1995.

Decided Jan. 12, 1996.

389

with intent to distribute heroin. She was tried on those charges on August 15, 1994.

### A. The Crime, Arrest, Trial, Conviction, and Sentence

The following is an account of the evidence presented by the government at trial. On February 13, 1994, Idowu was arrested at John F. Kennedy International Airport ("JFK") for attempting to smuggle eight kilograms of heroin into the United States from Nigeria. The heroin was found in the defendant's suitcase during a routine examination by the United States Customs Service ("Customs"). According to the testimony of Special Agent Peter Killie, Idowu agreed to cooperate with law enforcement after her arrest.

Killie testified that Idowu told him she received the suitcase from a "Mrs. T" in Lagos, Nigeria, and that she was to travel to her home in Boston from JFK, where she would receive further instructions regarding the delivery of the suitcase. Initially, Idowu claimed not to know the contents of the suitcase. In an attempt to catch others involved in the scheme, agents transported Idowu home to Boston and arranged a so-called "controlled delivery." Killie arranged for Idowu to call Mrs. T in Nigeria to tell her that she would be delayed in arriving in Boston. Idowu's calls to Nigeria were conducted in her native Yoruba language. After several unsuccessful attempts to reach Mrs. T, Idowu left a message, telling agents that she had asked Mrs. T to call her in Boston.

Agent Killie testified that he accompanied Idowu to Boston, where they were joined by Special Agents Edward Salvas and Jim Scott. In Boston, Idowu told Killie that half the heroin was for "Daniel" and the other half was for Mrs. T. This was later confirmed by agents who noted that the bags of heroin were labeled with initials on them.

Salvas testified that Idowu consented to a search of her apartment in Boston. Salvas testified that although Idowu told him no money or drugs were to be found in her apartment, the search uncovered approximately $14,993 in cash and $660 in traveler's checks. According to Salvas, when he con-

Howard L. Jacobs, New York City (Susan Beth Jacobs, New York City, of counsel), for Defendant–Appellant.

Arthur P. Hui, Assistant United States Attorney, New York City, Jo–Anne Weissbart, Assistant United States Attorney, New York City, (Zachary W. Carter, United States Attorney for the Eastern District of New York City, New York, Peter A. Norling, Assistant United States Attorney, of counsel) for Appellee.

Before: NEWMAN, Chief Judge, CARDAMONE and CABRANES, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge:

The defendant, Kemi Idowu, appeals from a judgment entered February 13, 1995, by the United States District Court for the Eastern District of New York (I. Leo Glasser, *Judge*), convicting her, after a jury trial, of importation of heroin and possession of heroin with intent to distribute, in violation of 21 U.S.C. §§ 952(a) and 841(a)(1), and sentencing her principally to imprisonment for 151 months. Idowu challenges that judgment on two grounds. First, she argues that her indictment should have been dismissed on double jeopardy grounds because the civil forfeiture of her property constituted a prior punishment for the same offense. Second, she argues that she was entitled to an adjustment at sentencing for her mitigating role in the offense pursuant to § 3B1.2 of the Sentencing Guidelines and that she should not be subject to the mandatory minimum sentence. For the reasons set forth below, we affirm the judgment of conviction and the sentence imposed.

## I. Background

On March 15, 1994, Kemi Idowu was indicted in the Eastern District of New York on one count of importing heroin into the United States and one count of possession

fronted Idowu about the cash, she admitted carrying cash for Daniel to Nigeria and Chicago on several prior occasions. She also informed Salvas that she was instructed to call Daniel to arrange for delivery of the suitcase in the event she was unable to reach Mrs. T. Salvas testified that Idowu admitted that she had carried cash for Daniel to Nigeria on her most recent trip and that the money found in her apartment was related to drug transactions. He further testified that Idowu told him that she traveled from Boston to Nigeria on January 7, 1994, to attend her sister's wedding and, while she was there, Mrs. T asked her to carry a suitcase back to Boston.

According to the government, Salvas arranged for Idowu to call Daniel, and she spoke with him briefly—again, in Yoruba. Idowu told agents that from her conversation she believed Daniel knew that she had been arrested. However, subsequent transcription and translation of recordings of Idowu's previous phone calls indicated that in her first phone call to Nigeria, Idowu had told her contacts that she had been arrested. Salvas also testified that Idowu told him she had recently purchased a 1993 Nissan Altima. Although Idowu told him that she had shipped the vehicle to Nigeria, agents located the car in a parking lot at Boston's Logan Airport on February 17, 1994. Subsequent investigation revealed that the car had been bought with $16,000 in cash.

Idowu testified on her own behalf at trial, denying the charges against her. She admitted telling contacts during her phone calls to Nigeria that she had been arrested, but she denied telling agents that the heroin was for Mrs. T and Daniel or that she had carried money for Daniel on previous occasions. She claimed that she was simply doing a favor for Mrs. T by carrying what she believed to be a suitcase of food into the United States. She also testified that the Nissan was a gift from her boyfriend. Idowu testified that she supported herself and her son through public assistance, and that the nearly $15,000 in cash found in her apartment had been sent by her parents who are wealthy Nigerians. On August 17, 1994, the jury returned a verdict of guilty on both counts of the indict-ment. On February 9, 1995, after denying Idowu's motion to dismiss pursuant to Rule 29—which will be discussed in greater detail below—the district court sentenced Idowu principally to 151 months imprisonment, the minimum sentence under the guidelines.

### B. *The Forfeiture*

On February 14, 1994, Customs in Boston seized the $14,993 in cash and the $660 in traveler's checks found in Idowu's apartment. Three days later, it also seized the Nissan. By two separate letters dated March 21, 1994, Customs notified Idowu of the seizure of the money and the car. She was informed that the money was subject to forfeiture pursuant to 19 U.S.C. § 1595a(a) (currency used to facilitate the importation and subsequent transportation of a controlled substance); 21 U.S.C. § 881(a)(6) (proceeds in exchange for a controlled substance); and 18 U.S.C. § 981(a)(1)(B) (property representing the proceeds of unlawful activity). Similarly, the car was seized and subject to forfeiture pursuant to 19 U.S.C. §§ 1595a(a) (vehicle used to facilitate the importation and transportation of controlled substance); 21 U.S.C. § 881(a)(6) (proceeds in exchange for a controlled substance); and 18 U.S.C. § 981(a)(1)(A) (property representing unlawful activity). Both letters advised Idowu of the procedures to contest the administrative forfeiture of her property, including the need to file a claim and a cost bond within 20 days of April 21, 1994, and April 22, 1994, respectively. Both notices also advised Idowu that "[u]pon satisfactory proof of financial inability to pay the bond, it would be waived." Idowu did not respond to either of these letters.

By two letters dated May 13, 1994, Customs wrote to Idowu, noting that she had failed to respond to previous correspondence regarding the seized currency and the automobile, and stating that she had until 20 days after May 4, 1994, to file a claim and a cost bond. Again, she failed to do so.

On June 17, 1994, the attorney representing Idowu in her criminal case in the Eastern

District of New York[1] wrote to Customs in Boston requesting that the forfeiture proceeding be stayed pending the outcome of the criminal case. In response, Customs sent a letter to defendant and her counsel, dated July 11, 1994, allowing Idowu until August 12, 1994, to file a claim and either a cost bond or a bond waiver request. The letter stated that although Customs would not stay the forfeiture proceeding, if Idowu filed a claim and cost bond (or obtained a waiver), the case would be referred to the U.S. Attorney's office for judicial forfeiture proceedings, and Idowu could renew her request for a stay at that time. Customs also noted that a request for waiver should "include as much information as possible regarding ... Idowu's financial assets and liabilities."

In a letter dated July 28, 1994, Idowu filed a claim for the car, the money, and the traveler's checks with Customs in Boston, claiming that they were neither the proceeds of criminal activities nor were they used in an illegal manner. She also requested a bond waiver, stating simply: "I am indigent. I have no money and I am incarcerated and unable to work or obtain any money." On August 22, 1994—five days after the jury returned its verdicts of conviction in her criminal case in the Eastern District of New York—Customs advised Idowu that her request for a waiver of bond had been denied because she had offered insufficient information regarding her financial assets and liabilities. The letter from Customs informed Idowu that she must submit a bond deposit by September 1, 1994, in order to avoid adminis-

trative forfeiture pursuant to 19 U.S.C. § 1609.[2]

On August 26, 1994, Idowu requested a thirty-day extension of time to obtain money from her family in Nigeria to post the required bond. Customs Officer Stephen Leonard authorized an additional extension of time until September 12, 1994. Although Idowu and her attorney in the criminal action had subsequent telephone conversations with Customs in which they claimed that Idowu's family would file the bond deposit by the September 12 deadline, no deposit was ever filed. Accordingly, on September 13, 1994, Customs in Boston executed an administrative "Declaration of Forfeiture" pursuant to 19 U.S.C. § 1609, forfeiting the car, the money, and the traveler's checks.

On November 21, 1994, Idowu, represented by new counsel in her criminal case, filed a Rule 29 motion[3] seeking dismissal of her indictment on the ground that it was barred by the Double Jeopardy Clause of the Fifth Amendment of the Constitution. In opposition, the government argued that: (1) the defendant had waived any claim she had by failing to contest the administrative forfeiture; (2) the forfeiture and criminal prosecution constituted a single, coordinated proceeding; (3) the Double Jeopardy Clause did not apply because her criminal prosecution and the forfeiture of her property were based on different offenses; and (4) the Double Jeopardy Clause was not, in any event, implicated because the defendant's property

---

1. Attorney Stephen M. Goldenberg represented Idowu during her criminal trial in the Eastern District of New York. Mr. Goldenberg's letter indicated that, although he was writing to assist Idowu, he was *not* entering an appearance on her behalf in the forfeiture action. Goldenberg did, however, speak with a Customs officer regarding the forfeiture on at least two subsequent occasions.

2. 19 U.S.C. § 1609 states:

(a) If no ... claim is filed or bond given within the twenty days hereinbefore specified, the appropriate customs officer shall declare the [property] forfeited, and shall sell the same at public auction....

(b) A declaration of forfeiture under this section shall have the same force and effect as a

final decree and order of forfeiture in a judicial forfeiture proceeding in a district court of the United States.

3. Idowu's motion to dismiss—which, in this case, is a motion for judgment of acquittal—was filed in violation of Rule 29(c), which requires that such motions be made "within 7 days after the jury is discharged." At oral argument on appeal, all counsel indicated that the district court had effectively exercised its discretion to entertain the belated motion in light of the fact that Idowu had recently retained new counsel. Since we find this to be well within the district court's discretion, *see United States v. Knox*, 977 F.2d 815, 819 (3d Cir.1992), *vacated on other grounds*, —— U.S. ——, 114 S.Ct. 375, 126 L.Ed.2d 325 (1993), we address the merits of the defendant's appeal.

was administratively forfeited *after* her criminal conviction.

At a hearing on February 9, 1995, Judge Glasser denied Idowu's Rule 29 motion "for all the reasons indicated in the government's brief." He also denied Idowu's motion for a four-point reduction in offense level, sentencing her to 151 months' imprisonment—the minimum sentence under the applicable guidelines range.

## II. Discussion

### A. *Double Jeopardy*

■ The Double Jeopardy Clause of the Fifth Amendment [4] protects a defendant against three distinct abuses: "a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." *United States v. Halper*, 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989). Idowu argues that the Double Jeopardy Clause barred her criminal prosecution for importation of heroin and possession with intent to distribute heroin because she had already been punished by the forfeiture of the Nissan, the $14,993 in cash, and the $660 in traveler's checks. The government argues that several independent grounds support the district court's holding that Idowu's criminal prosecution did not put her twice in jeopardy in violation of the Constitution.

### 1. *Forfeiture as "Punishment"*

On appeal, the government contends that the administrative forfeiture in this case did not implicate double jeopardy because it was not an "overwhelmingly disproportionate sanction" and therefore did not constitute "punishment" for the purposes of the Double Jeopardy Clause. Idowu counters that our proportionality test, as set forth in *United States v. 38 Whalers Cove Drive*, 954 F.2d 29 (2d Cir.), *cert. denied sub nom. Levin v. United States*, 506 U.S. 815, 113 S.Ct. 55, 121 L.Ed.2d 24 (1992), is no longer the appropriate test for determining whether a civil forfeiture may be classified as punishment, and that under the Supreme Court's holding in *Austin v. United States*, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), all civil forfeiture constitutes punishment within the meaning of the Double Jeopardy Clause. Both arguments overly simplify a complex and confused question.

In *Halper*, the Supreme Court held that "a civil sanction that cannot fairly be said *solely* to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term." 490 U.S. at 448, 109 S.Ct. at 1901–02 (emphasis supplied). We considered *Halper's* impact on civil forfeiture in *38 Whalers Cove Drive*, where we held that "[civil forfeitures] that are overwhelmingly disproportionate to the value of the offense, must be classified as punishment unless the forfeitures are shown to serve articulated, legitimate civil purposes." 954 F.2d at 35. We went on to note that "legitimate civil purposes" for forfeiture include the removal of "instrumentalities of crime from general circulation" and the compensation of "the government's investigation and enforcement expenditures, in addition to any damages the government may suffer directly as a result of criminal acts." *Id.* at 35–36.

In *Austin*, the Supreme Court held that civil forfeitures pursuant to 21 U.S.C. §§ 881(a)(4) and (a)(7) constituted punishment for the purposes of the Excessive Fines Clause of the Eighth Amendment.[5] 509 U.S.

---

**4.** The Double Jeopardy Clause states: "No person shall be ... subject for the same offense to be twice put in jeopardy of life or limb...." U.S. Const. amend. V.

**5.** The Eighth Amendment of the Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." U.S. Const. amend. VIII.

21 U.S.C. § 881(a)(4) provides for forfeiture of "[a]ll conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of [controlled substances, their raw materials and equipment used in their manufacture and distribution]."

21 U.S.C. § 881(a)(7) provides for forfeiture of "[a]ll real property, including any right, title, and interest ... in the whole of any lot or tract of

at ——, 113 S.Ct. at 2812. In that case, the Court considered whether the *forfeiture statutes* at issue were remedial or punitive, rather than whether the *forfeiture of the property* involved in the case was remedial or punitive. In concluding that forfeitures pursuant to these particular statutes were not *solely* remedial—and therefore under *Halper* must be considered punitive—the Court considered three factors: (1) the historical understanding of forfeiture as punishment; (2) the focus of the statutes on the culpability of the owner; and (3) evidence, such as legislative history, that Congress understood these provisions as serving to deter and to punish.[6] *Id.* at ——, 113 S.Ct. at 2812.

Our court has not yet applied the *Austin* approach to double jeopardy cases. In *United States v. United States Currency in the Amount of $145,139.00*, 18 F.3d 73, 75 (2d Cir.), *cert. denied sub nom. Etim v. United States*, —— U.S. ——, 115 S.Ct. 72, 130 L.Ed.2d 27 (1994), a panel of this court applied *Whalers Cove*, without citing *Austin*, noting that the forfeiture of currency employed as an "instrumentality of the crime" was not punitive under *Halper*. In an even more recent opinion, another panel of our court considered, without deciding, whether the Supreme Court in *Austin* intended to supersede the case-by-case methodology of *Halper* and *Whalers Cove* for determining whether forfeiture constitutes punishment for the purposes of the Double Jeopardy Clause. *United States v. All Assets of G.P.S. Automotive*, 66 F.3d 483, 491 (2d Cir.1995).

Four other circuits that have considered this question have concluded that "the only fair reading of the Court's decision in *Austin* is that it resolves the 'punishment' issue with respect to forfeiture cases for purposes of the Double Jeopardy Clause as well as the Ex-

cessive Fines Clause." *United States v. $405,089.23 United States Currency*, 33 F.3d 1210, 1219 (9th Cir.1994), *amended in part on denial of rehearing*, 56 F.3d 41 (9th Cir. 1995), *cert. granted*, —— U.S. ——, 116 S.Ct. 762, 133 L.Ed.2d 707 (1996); *see United States v. Baird*, 63 F.3d 1213, 1216 (3d Cir. 1995) (quoting *$405,089.23 United States Currency* with approval), *petition for cert. filed*, 64 U.S.L.W. 3318 (U.S. Oct. 17, 1995) (No. 95–630); *United States v. Perez*, 70 F.3d 345, 348–49 (5th Cir.1995) (applying *Austin* approach to civil forfeiture under 21 U.S.C. § 881(a)(4) for purposes of double jeopardy analysis); *United States v. Ursery*, 59 F.3d 568, 573 (6th Cir.1995) ("[U]nder *Halper* and *Austin*, any civil forfeiture under 21 U.S.C. § 881(a)(7) constitutes punishment for double jeopardy purposes."), *cert. granted*, —— U.S. ——, 116 S.Ct. 762, 133 L.Ed.2d 707 (1996); *cf. United States v. Tilley*, 18 F.3d 295, 300 (5th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 574, 130 L.Ed.2d 490 (1994) (finding *Austin* approach inapplicable to forfeiture of drug proceeds under § 881(a)(6),[7] because such proceeds can be said to be "roughly proportion[ate]" to the costs incurred by the government and society as a result of the crimes). Although it is not clear that the Supreme Court intended *Austin* to define punishment for the purposes of double jeopardy analysis, we see no principled basis for distinguishing between "punishment" in the context of the Excessive Fines Clause and "punishment" in the context of the Double Jeopardy Clause. If Idowu's claim involved *judicial* forfeiture, the district court might have been required to apply the *Austin* analysis to the relevant forfeiture statutes to determine whether Iodwu had twice been placed in jeopardy. Because we conclude that *administrative* forfeiture of property

---

land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter."

**6.** It should be noted that in offering this new method of analysis, the Court stated that it did not mean to alter its position in *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 364, 104 S.Ct. 1099, 1105–06, 79 L.Ed.2d 361 (1984), "that the forfeiture of contraband itself may be characterized as remedial because it re-

moves dangerous or illegal items from society." *Austin*, 509 U.S. at ——, 113 S.Ct. at 2811.

**7.** 21 U.S.C. § 881(a)(6) provides for forfeiture of "[a]ll moneys ... or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys ... used or intended to be used to facilitate any violation of this subchapter."

does not constitute punishment, Idowu's claim fails in any event.

## 2. *Waiver*

Administrative forfeitures are authorized by the procedural provisions of the customs laws[8] and are incorporated by reference in various civil forfeiture statutes.[9] Pursuant to 19 U.S.C. § 1607(a), if property falls within any of four categories,[10] it may be forfeited by the seizing agency if proper notice of the seizure and intent to forfeit is given and no person files a claim to the property, accompanied by a cost bond, within the allotted time period. *Id.* § 1609. The customs laws require the filing of claims within 20 days of the date of the first publication of the notice of seizure and intent to forfeit. *Id.* § 1608. Such claims must be accompanied by a cost bond in an amount determined by statute, *see id.;* seizing agencies may waive the cost bond requirement in cases of demonstrated indigence, *see* 19 C.F.R. § 162.47(e). The proper and timely filing of a claim and cost bond stops the administrative forfeiture process, and requires the seizing agency to refer the matter to the United States Attorney for the district where the property was seized for the institution of judicial forfeiture proceedings. *Id.* §§ 1603(b) and 1608. Where no person files a claim or bond within the statutory period, the agency is authorized to declare the property forfeited. *Id.* § 1609.

In effect, administrative forfeiture is appropriate only in cases where the seized property goes unclaimed. Indeed, "administrative forfeiture is, in reality, a *non-proceeding*—it is merely the consequence of no one having come forward to claim the property seized or contest its forfeitability." *Baird,* 63 F.3d at 1217; *see United States v. Cretacci,* 62 F.3d 307, 310 (9th Cir.1995) ("[A]n administrative forfeiture of unclaimed property simply constitutes the taking of abandoned property."). In the instant case, the government argues that the forfeiture of un-claimed property—that is, the administrative forfeiture—cannot have "punished" anyone. Accordingly, the seizure of the unclaimed car, money, and traveler's checks did not place Idowu in jeopardy.

It is the unanimous view of the circuits that have considered the question that an administrative forfeiture resulting from a defendant's failure to claim property cannot implicate double jeopardy. These courts reason that a defendant who fails to contest the forfeiture is never a party to the forfeiture proceeding (which is technically brought against the property itself, rather than its owner), and as a non-party, the defendant cannot be punished and thus cannot be placed in jeopardy.

> Because [the defendant] failed to contest the forfeiture, he never became a party to any judicial proceeding, criminal or civil. In fact, no judicial proceeding occurred prior to the forfeiture of the money—such being the very nature of administrative forfeiture. [The defendant] has therefore yet to have been placed in jeopardy, or at risk, of a determination of "guilt" and the concomitant imposition of "punishment."

*Baird,* 63 F.3d at 1219 (3d Cir.1995); *see United States v. Arreola–Ramos,* 60 F.3d 188, 192 (5th Cir.1995) ("[A] summary forfeiture, by definition, can never serve as a jeopardy component of a double jeopardy motion.... [T]here is no trial, there are no parties, and *no one is punished.*"); *United States v. Ursery,* 59 F.3d 568, 572 (6th Cir. 1995) (citing *United States v. Torres,* 28 F.3d 1463, 1465 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 669, 130 L.Ed.2d 603 (1994), for the proposition that "jeopardy does not attach to a civil forfeiture when the party claiming double jeopardy was not a party to the forfeiture proceeding"); *United States v. Ruth,* 65 F.3d 599, 603 (7th Cir.1995) ("The failure to contest the forfeiture ... mean[s] that the defendant was not a party to the forfeiture and thus ha[s] not been subjected

---

**8.** 19 U.S.C. §§ 1602–1621.

**9.** *See, e.g.,* 18 U.S.C. § 981(d) and 21 U.S.C. § 881(d).

**10.** The four categories are: (1) property of a value that does not exceed $500,000; (2) proper-ty whose importation is prohibited; (3) any vessel, vehicle, or aircraft used to import, export, transport or store illegal drugs; or (4) United States coins, currency or other "monetary instruments" such as traveler's checks. 19 U.S.C. § 1607(a).

to a 'former jeopardy.' "); *Cretacci,* 62 F.3d at 310 (9th Cir.1995) (concluding that administrative forfeiture of unclaimed property "imposes no 'punishment' for purposes of the Double Jeopardy Clause").

Idowu argues that this rule is not applicable here for two reasons: (1) the property at issue could not be deemed "abandoned" or unclaimed because the agents who seized it knew that it belonged to her, and (2) she actually filed a claim to the property in dispute, but merely failed to file a bond or obtain a bond waiver. For the reasons set forth below, both of Idowu's arguments fail.

■ First, we find it irrelevant whether or not the seizing agency—in this case, the Customs Service—knows that the defendant owns the property. If the defendant wishes to assert ownership of seized property after notice of forfeiture, she must assert her interest by filing a claim and a cost bond, thus requiring the government to institute *judicial* forfeiture proceedings. *See United States v. Washington,* 69 F.3d 401, 404 (9th Cir.1995) ("Even if [the defendant's] physical possession of the money did support his interest in it at the time of the seizure, ... it does not demonstrate that [the defendant] wished to pursue that interest once the Government notified him that it was seeking forfeiture of the money."); *Baird,* 63 F.3d at 1218 ("Even if we were to assume, *arguendo,* that [the defendant] was the owner of the seized and forfeited money, ... we do not agree that administrative forfeitures place in jeopardy the person whose property is so forfeited."); *United States v. Kemmish,* 869 F.Supp. 803, 804 (S.D.Cal.1994) ("Even where the unclaimed property is titled in the name of some person, personal rights protected by the Double Jeopardy Clause are not affected by the forfeiture of the property through administrative proceedings."), *aff'd mem.* 66 F.3d 336 (9th Cir.1995).

Idowu's second argument—that she "assert[ed] her rights in the administrative forfeiture proceeding" and that "[h]er failure to file the bond should not ... constitute a waiver of her [double jeopardy] rights"—fails as well. First, in failing to file a cost bond or obtain a waiver, Idowu did not satisfy the statutory requirements for avoidance of the administrative forfeiture of the property at issue. *See* 19 U.S.C. § 1608; 19 C.F.R. § 162.47. Idowu was given every opportunity to apply for a bond waiver or file a bond. She was given two extensions of time in order to file her claim and bond, and the procedure for obtaining a bond waiver was clearly set forth in documents sent to her by Customs. In her letter of July 28, 1994, Idowu claimed the property, but did not provide sufficient financial information to justify a bond waiver. After denying Idowu's application for a waiver, Customs *again* extended the deadline for posting a bond until August 29, 1994. At Idowu's request, on August 27, 1994, she was given still another extension until September 12, 1994. It was only after she failed to post bond on September 12, 1994—more than *four months* after her initial forfeiture date in May 1994—that the agency executed a declaration forfeiting the property. According to the record, Idowu never challenged the administrative decree of forfeiture or otherwise sought return of the property on the ground that the agency improperly denied her a bond waiver, or that the administrative forfeiture itself was defective. On appeal she does not challenge the validity of the forfeiture—indeed, she clearly hopes that we will confirm the validity of the forfeiture and permit its use as a shield against prosecution.

■ For the reasons discussed above, a valid administrative forfeiture does not constitute "punishment" of the putative property owner. If the necessary statutory requirements are not met and no *judicial* forfeiture proceedings are instituted, no jeopardy attaches. In *Ruth,* 65 F.3d at 603–04, the Seventh Circuit found that jeopardy did not attach as a result of an administrative forfeiture where the defendant filed his claim to the property after the deadline. *See also United States v. Amiel,* 889 F.Supp. 615, 620–21 (E.D.N.Y.1995) (holding that party who filed a timely claim but defaulted by failing to pursue it could not rely on that forfeiture to assert a claim of double jeopardy). We find these cases persuasive. Because Idowu did not post bond or obtain a waiver, her property was subject to adminis-

trative forfeiture, and jeopardy simply could not, and did not, attach.

### 3. Attachment of Jeopardy

The government argues, finally, that even if jeopardy could be said to attach as a result of an administrative forfeiture, the defendant's double jeopardy claim must fail because jeopardy attached in the criminal case *before* it arguably attached in the forfeiture case.

It is well established that jeopardy attaches in a criminal prosecution when the jury is empaneled and sworn. *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 569, 97 S.Ct. 1349, 1353, 51 L.Ed.2d 642 (1977); *United States v. White*, 980 F.2d 836, 842 (2d Cir.1992). Accordingly, jeopardy attached in Idowu's criminal case on August 15, 1994.

Although we have never had occasion to consider when jeopardy attaches in a civil forfeiture proceeding, several other circuits have addressed the question. The majority of courts have held that jeopardy attaches (1) when the trier of fact begins to hear evidence at a judicial forfeiture proceeding, *Baird*, 63 F.3d at 1218 (holding that jeopardy does not attach until a defendant is "put to trial before a trier of facts"); *Torres*, 28 F.3d 1463, 1465 (7th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 669, 130 L.Ed.2d 603 (1994) (concluding that jeopardy attaches "when the case is first presented to the trier of fact"), or (2) when there is an order for final administrative action against the defendant's property. *See Ursery*, 59 F.3d at 572 ("Jeopardy attaches in a nontrial forfeiture proceeding when the court ... enters the judgment of forfeiture."); *United States v. Park*, 947 F.2d 130, 135 (5th Cir.1991) (holding that jeopardy does not attach until there is adjudication or final administrative action), *vacated in part on other grounds on rehearing in part*, 951 F.2d 634 (5th Cir.1992); *Ragin v. United States*, 893 F.Supp. 570, 574 (W.D.N.C.1995) ("[J]eopardy attaches when the final judgment of forfeiture is entered, and not when the claim or answer is filed or the property is seized."); *cf. United States v. Barton*, 46 F.3d 51, 52 (9th Cir.1995) (noting that the earliest jeopardy could attach to civil forfei-

ture proceedings was when the defendant "filed his answer to the forfeiture complaint").

■ Since Idowu never filed a claim to the property, the forfeiture was never brought before a trier of fact. The administrative declaration of forfeiture was not issued until September 13, 1994—almost one month after Idowu's trial commenced (August 15, 1994) and after her conviction on criminal charges (August 17, 1994). Accordingly, we find that jeopardy in the forfeiture action, if it attached at all, did not attach until well *after* jeopardy had attached in Idowu's criminal prosecution.

■ As noted above, the Double Jeopardy Clause protects criminal defendants from both successive prosecutions for the same offense after conviction *and* successive punishments for the same offense. *See Halper*, 490 U.S. at 440, 109 S.Ct. at 1897. At oral argument, a question was raised about whether the analysis for determining when jeopardy attaches changes when we focus on the Double Jeopardy Clause's prohibition against successive *punishments*, rather than its prohibition against successive *prosecutions*. More specifically, the issue is whether, in successive punishment cases, jeopardy should attach when the criminal trial begins and the defendant is placed *at risk* of being punished (as it is in successive prosecution cases) or whether it should attach when jeopardy is "complete"—that is, the date when the punishment is imposed. This question is important here because although Idowu was tried and convicted in August 1994 (a month *before* jeopardy arguably attached in the forfeiture case), she was not actually sentenced until February 13, 1995 (six months *after* jeopardy arguably attached in the forfeiture case). In *United States v. Pierce*, 60 F.3d 886, 889–90 (1st Cir.1995), *petition for cert. filed*, (U.S. Oct. 19, 1995) (No. 95–6474), the First Circuit rejected the identical argument about measuring the attachment of jeopardy from the date that punishment is "complete":

> [This argument implies that] a defendant ought to have the option to endure an unconstitutional second trial in the hope that it will both conclude first and lead to a more lenient punishment than that eventu-

ally imposed in the first trial, and then to object to the punishment imposed in the first trial on double jeopardy grounds. We cannot locate any authority to support this proposition, and we reject it out of hand.

The Double Jeopardy Clause is a shield against the oppression inherent in a duplicative, punitive proceeding; it is not a tool by which a defendant can avoid the consequences of the proceeding in which jeopardy first attached.

*Id.* at 890. We find this reasoning persuasive, and likewise reject out of hand the theory that jeopardy in the context of successive punishments does not attach until the time of punishment.

Because the grounds set forth above are enough to require rejection of Idowu's double jeopardy claim in this appeal, it is not necessary for us to address the other arguments made by the government.

### B. *Sentencing Issues*

The defendant also appeals the district court's order denying an adjustment for a mitigating role in the offense pursuant to U.S.S.G. § 3B1.2. This provision of the Sentencing Guidelines permits the court to decrease a defendant's offense level by four points where it finds that the defendant was a minimal participant in the criminal activity and by two points where it finds the defendant was a minor participant. The application notes to § 3B1.2 define a "minimal participant" as one who is "plainly among the least culpable of those involved in the conduct of a group," *id.* § 3B1.2 app. n. 1, and a "minor participant" as "any participant who is less culpable than most other participants," *id.* § 3B1.2 app. n. 3.

■■■■ A defendant bears the burden of proving her reduced culpability by a preponderance of the evidence when requesting an offense level reduction under U.S.S.G. § 3B1.2. *United States v. Shonubi,* 998 F.2d 84, 90 (2d Cir.1993). "A district court's finding as to a defendant's role in a criminal activity is a factual determination that will not be disturbed unless 'clearly erroneous.'" *United States v. Soto,* 959 F.2d 1181, 1187 (2d Cir.1992). The determination of whether a role adjustment is appropriate in "courier" or "mule" cases depends upon "the nature of the defendant's relationship to the other participants, the importance of the defendant's actions to the success of the venture, and the defendant's awareness of the nature and scope of the criminal enterprise." *United States v. Garcia,* 920 F.2d 153, 155 (2d Cir. 1990) (per curiam).

■■■■ Judge Glasser found that Idowu was not a mere drug courier, but rather, that she had extensive knowledge of the importation scheme and was connected to it in a variety of ways. There was sufficient evidence at trial to support the judge's finding that Idowu had a clear understanding of the nature and scope of the international drug operation involving Mrs. T and Daniel. Because Judge Glasser's findings are not clearly erroneous, we find that he acted properly in refusing to adjust Idowu's offense level under § 3B1.2.[11]

### III. Conclusion

To summarize:

1. We affirm the district court's denial of Idowu's Rule 29 motion seeking dismissal of her criminal indictment on the ground that it was barred by the Double Jeopardy Clause of the Fifth Amendment of the Constitution. Jeopardy did not attach as a result of the administrative forfeiture of the property because such property is, by definition, property that is not claimed. In essence, Idowu

---

11. Idowu raises a third claim, arguing that she should not be subject to the ten-year mandatory minimum required by 21 U.S.C. §§ 960(b)(1) and 841(b)(1)(A) because she is entitled to an exception from the minimum under 18 U.S.C. § 3553(f). *See also* U.S.S.G. § 5C1.2. Section 3553(f) permits a court to sentence a defendant to a term less than the statutory mandatory minimum under certain circumstances, but it still requires the court to impose a sentence within the applicable guidelines range. Because Ido-

wu's sentence of 151 months was the lowest possible within the applicable guidelines range, Idowu's argument about the mandatory minimum is only relevant if the panel finds that the court placed her within the wrong guideline range by improperly denying her motion for a reduction pursuant to U.S.S.G. § 3B1.2. Because we find that the district court properly denied Idowu's motion for an adjustment under § 3B1.2, we need not address whether Idowu meets the § 3553(f) criteria.

was not a party to that proceeding. Indeed, even if jeopardy could attach as a result of an administrative forfeiture, in this case jeopardy attached in Idowu's criminal trial *before* it attached in the forfeiture proceeding.

2. Because the district court's findings with respect to Idowu's role in the offense are not clearly erroneous, we find that the district court acted properly in refusing to accord her the adjustment pursuant to U.S.S.G. § 3B1.2.