**Michael FISHER, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**Civil Action No. 96–10385–WGY.**

United States District Court,
D. Massachusetts.

June 4, 1996.

Anthony M. Traini, Traini Law Offices, Chestnut Hill, MA, for Michael Fisher.

Michael Fisher, White Deer, PA, pro se.

Patrick M. Hamilton, U.S. Attorney's Office, Boston, MA, for U.S.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

This petition for habeas corpus filed by Michael Fisher ("Fisher") pursuant to 28 U.S.C. § 2255 presents the issue whether the administrative forfeiture of Fisher's automobile premised upon his involvement in a drug trafficking scheme precludes his later criminal conviction and sentence for that same scheme as violative of the Double Jeopardy Clause of the Fifth Amendment.

### I. BACKGROUND

Fisher was arrested on December 29, 1989, pursuant to a criminal complaint issued by the United States District Court for the District of Massachusetts and, on January 26, 1990, was indicted along with his co-defendants Ali Osseiran and Rashid Haloui for (1) attempted possession with intent to distrib-

ute cocaine in violation of 21 U.S.C. § 846 and (2) conspiring with Ali Osseiran to violate 21 U.S.C. § 846.[1]

At the time of Fisher's arrest, the government seized one 1989 Lincoln Town Car pursuant to 21 U.S.C. § 881(a)(4).[2] The government provided Fisher with a copy of a "Notice of Seizure of a Conveyance for a Drug Related Offense" with regard to the Lincoln Town Car. See Motion to Vacate, Set Aside, or Correct Sentence by Person in Federal Custody Pursuant to 28 U.S.C. § 2255 ("Motion to Vacate"), Ex. D. The automobile was registered in Fisher's name and he possessed title to the car. Pursuant to 19 U.S.C. § 1608, the United States Drug Enforcement Administration sent by certified mail a notice of seizure to Fisher's home address in Winthrop, Massachusetts on three occasions. See Ex. E; Government's Opposition to Michael Fisher's Second Motion Pursuant to 28 U.S.C. § 2255 ("Government's Opposition"), Ex. 2. In addition, the Drug Enforcement Administration published notice of the seizure in USA Today for three consecutive weeks. See Motion to Vacate, Ex. F; Government's Opposition, Ex. 3. Approximately twenty days after the first publication of the notice, as Fisher failed to file a claim, the vehicle was administratively forfeited pursuant to 19 U.S.C. § 1609.

On or about March 13, 1990, Fisher filed a Motion for Return of Vehicle. The government opposed the motion stating that Fisher had failed to respond to the forfeiture notices in a timely manner and was therefore precluded from recovering the vehicle under Fed.R.Crim.P. 41(e). Fisher denied receipt of any registered mail sent to him by the Drug Enforcement Administration. See Motion to Vacate, Ex. K. Finding that Fisher had given the government the address to

---

1. 21 U.S.C. § 846, concerning attempt and conspiracy, reads:

   Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

2. 21 U.S.C. § 881(a)(4) reads in pertinent part: (a) Subject property

   The following shall be subject to forfeiture to the United States and no property right shall exist in them ... (4) All conveyances, including aircraft, vehicles, or vessels, which are used or are intended for use, to transport, or in any manner facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraphs (1), (2) or (9), (exceptions omitted).

which the notices were sent, Chief Judge Tauro denied Fisher's motion at a hearing held on May 23, 1990. *See* Government's Opposition, Ex. 4. Fisher did not appeal this decision.

Meanwhile, the criminal action against Fisher proceeded apace. Facing extensive *Bruton* problems, the government put the alleged drug courier, Haloui, to trial first, evidently expecting to use him, after a guilty verdict, to bolster their case against Osseiran and Fisher. In this, they were disappointed, as Haloui was acquitted. *United States v. Haloui*, 89–CR–100204 (D.Mass. June 1, 1990). Nevertheless, the government had Haloui held as a material witness and, on September 17, 1990, trial commenced against Osseiran and Fisher. While the events of that trial are not without interest, *see United States v. Osseiran*, 798 F.Supp. 861 (D.Mass. 1992), they need not be recounted here. It suffices to say that Fisher was convicted on both counts and this Court imposed a sentence of ten years imprisonment.

Fisher appealed both his conviction and sentence to the Court of Appeals for the First Circuit. On June 3, 1991, while that appeal was pending, he filed his first habeas corpus petition asserting ineffective assistance of counsel. This Court denied that petition on September 29, 1992. On August 17, 1993, the Court of Appeals affirmed Fisher's criminal convictions and sentence. *See United States v. Fisher*, 3 F.3d 456 (1st Cir.1993). Fisher's present motion asserts for the first time—perhaps in response to the media coverage of the Supreme Court's granting certiorari in *United States v. $405,089.23 U.S. Currency* and *United States v. Ursery*, —— U.S. ——, 116 S.Ct. 762, 133 L.Ed.2d 707 (1996), see also Paul M. Barrett, *Justices Rule on Use of Criminal Case and Forfeiture Suit Against Defendants*, Wall St.

J., Jan. 15, 1996 at B3; Laurie Asseo, *U.S. Court to Hear Forfeiture Cases*, The Boston Globe, Jan. 13, 1996 at 3,—that his criminal conviction violates the Double Jeopardy Clause.

## II. *ANALYSIS*

■ Fisher argues that his criminal prosecution and punishment following the administrative forfeiture of the Lincoln Town Car violates the Double Jeopardy Clause, thus invalidating his criminal sentence.[3] Fisher has two procedural hurdles to overcome, however, before this Court can reach the merits of his double jeopardy claim.

## A. WAIVER & RETROACTIVITY

■ The government argues, *inter alia*, that Fisher waived his double jeopardy claim by failing to raise it either at the time of his original criminal trial, his subsequent appeal, or even in his first habeas corpus petition. The government contends that since both the Double Jeopardy Clause and the Supreme Court's seminal decision in *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989) were available at the time of Fisher's prior proceedings, he is presently barred from raising a double jeopardy claim.[4]

■ A defendant is required to raise a defense in a timely manner at trial or on direct appeal. *See United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982), *reh'g. denied*, 456 U.S. 1001, 102 S.Ct. 2287, 73 L.Ed.2d 1296 (1982). However, the Supreme Court has said that a defendant is justified in not raising a claim if at the time of the proceedings in question, "[the] claim is so novel that its legal basis is not reasonably available to counsel." *Reed v. Ross*, 468 U.S.

**3.** It should be noted at the outset that had the government sought both the forfeiture and the imprisonment in the same indictment, Fisher would not possess the ability to assert a double jeopardy claim since cumulative punishment resulting from a single proceeding is not barred. *See Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983). The government should heed the admonition of the Seventh Circuit: "The United States would do well to seek imprisonment, fines, and forfeiture in one proceeding" thereby avoiding claims of

double jeopardy. *United States v. Torres*, 28 F.3d 1463, 1464 (7th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 669, 130 L.Ed.2d 603 (1994).

**4.** In *Halper*, the Supreme Court held that, if other conditions are met, either criminal prosecutions or civil sanctions instituted by the same sovereign may constitute punishment sufficient to implicate the Double Jeopardy Clause. *Halper*, 490 U.S. at 448, 109 S.Ct. at 1901–02.

1, 16, 104 S.Ct. 2901, 2910, 82 L.Ed.2d 1 (1984).

The underpinning of Fisher's present argument was not fully explicated until the Supreme Court's decision in *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), which was announced on June 28, 1993.[5] *Austin* holds that civil forfeiture under 21 U.S.C. § 881(a)(4) constitutes punishment for purposes of the Excessive Fines Clause.[6] While the Court in *Austin* stated that its holding was dictated by history and existing precedents, *Austin,* 509 U.S. at 616 n. 9, 617, 621, 113 S.Ct. at 2809 n. 9, 2810, 2812, it establishes a legal rule that had not previously been applied. In its wake, federal courts have been struggling with variants of the issue posed by Fisher's present motion. Indeed, the Supreme Court has just recently heard two double jeopardy claims involving criminal convictions and civil-forfeitures. *See United States v. $405,089.23 U.S. Currency,* 33 F.3d 1210 (9th Cir.1994) (convictions obtained in a criminal case followed by forfeiture of property in a civil proceeding violates the Double Jeopardy Clause), *op. amended on denial of reh'g by,* 56 F.3d 41 (9th Cir.1995), *cert. granted sub nom. United States v. Ursery,* — U.S. —, 116 S.Ct. 762, 133 L.Ed.2d 707 (1996); *United States v. Ursery,* 59 F.3d 568 (6th Cir.1995) (civil forfeiture followed by a criminal conviction violated the Double Jeopardy Clause), *cert. granted,* — U.S. —, 116 S.Ct. 762, 133 L.Ed.2d 707 (1996). In the present unsettled state of the law, the rationale of *Reed* would indicate that Fisher had cause not to earlier raise his double jeopardy claim.[7] *See* Fed. R.Crim.P. 12(f).

■ However, concluding that Fisher did not waive his double jeopardy argument because the decision in *Austin* changed the landscape of double jeopardy jurisprudence leaves him with a second potential dilemma to overcome. The government argues that Fisher may not avail himself of *Austin* in this context because of the prohibition, enunciated in *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and its progeny, against the retroactive application of so-called "new" rules of law. *See Saffle v. Parks,* 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990), *reh'g denied,* 495 U.S. 924, 110 S.Ct. 1960, 109 L.Ed.2d 322 (1990); *Butler v. McKellar,* 494 U.S. 407, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990). The government argues, in essence, that Fisher is caught in a legal whipsaw; either he waived his current argument by failing to raise it earlier, or he is precluded from taking advantage of the rule announced by *Austin* for the very reason that it was not available to him in his earlier proceedings.[8]

---

**5.** The last opportunity that Fisher would have had to raise this argument prior to his present petition was in oral argument to the First Circuit Court of Appeals, which took place on March 3, 1993, four months prior to the issuance of the Supreme Court's opinion in *Austin. See Fisher,* 3 F.3d at 456.

**6.** *Austin,* 509 U.S. at 621–23, 113 S.Ct. at 2812. Several courts have concluded that *Austin's* punishment analysis of 21 U.S.C. § 881(a)(4), the same provision under which Fisher's vehicle was seized, applies with equal force to the Double Jeopardy Clause. *See United States v. Idowu,* 74 F.3d 387, 393 (2nd Cir.1996) ("[W]e see no principled basis for distinguishing between 'punishment' in the context of the Excessive Fines Clause and 'punishment' in the context of the Double Jeopardy Clause."); *United States v. $405,089.23 U.S. Currency,* 33 F.3d 1210, 1219 (9th Cir.1994) (asserting that *Austin* "resolved the 'punishment' issue with respect to forfeiture case for purposes of the Double Jeopardy Clause as well as the Excessive Fines Clause"); *United States v. Ursery,* 59 F.3d 568, 573 (6th Cir.1995) ("[U]nder Halper and Austin, any civil forfeiture under 21 U.S.C. § 881(a)(7) constitutes punishment for double jeopardy purposes."); *United States v. Baird,* 63 F.3d 1213, 1216 (3d Cir.1995) (quoting *United States v. $405,089.23 U.S. Currency* with approval; *but see United States v. Stoller,* 78 F.3d 710, 718 (1st Cir.1996) (differentiating between the punitiveness inquiry under the Double Jeopardy Clause and the excessiveness inquiry for purposes of the Excessive Fines Clause in the context of non-monetary sanctions).

**7.** In *Ursery,* 59 F.3d at 570–71, the Sixth Circuit deemed *Austin* a clarification of law which satisfied a requirement of showing cause for not previously raising the double jeopardy issue. For an explication of the Sixth Circuit's decision in *Ursery,* see *Recent Cases,* 109 Harv.L.Rev. 852 (1996).

**8.** At least one court has noted that the tension between *Ross* and *Teague* makes *Ross's* continuing vitality questionable. *See Boyer v. United States,* 55 F.3d 296, 299 (7th Cir.1995).

While this is a question that the First Circuit has yet to address, this Court has expressed the opinion that the *Teague* standard does not apply in the section 2255 context, see *United States v. Payne,* 894 F.Supp. 534 (D.Mass.1995), and this Court continues to be of that opinion. However, as several courts have explicitly held that *Teague* does apply to section 2255, *see Van Daalwyk v. United States,* 21 F.3d 179, 181–183 (7th Cir.1994); *Gilberti v. United States,* 917 F.2d 92, 94–95 (2d Cir.1990); *Sanabria v. United States,* 916 F.Supp. 106, 110 (D.P.R.1996); *United States v. Tayman,* 885 F.Supp. 832, 837–38 (E.D.Va.1995); *Elortegui v. United States,* 743 F.Supp. 828, 831 (S.D.Fla.1990), *aff'd without opinion,* 943 F.2d 1317 (11th Cir.1991), *cert. denied,* 502 U.S. 1116, 112 S.Ct. 1229, 117 L.Ed.2d 464 (1992); *Hrubec v. United States,* 734 F.Supp. 60, 65 (E.D.N.Y.1990), and others have applied it without discussion, *see, e.g., United States v. Judge,* 944 F.2d 523, 525 (9th Cir.1991), *cert. denied,* 504 U.S. 927, 112 S.Ct. 1988, 118 L.Ed.2d 585 (1992); *United States v. Pavlico,* 961 F.2d 440, 443 (4th Cir.), *cert. denied,* 506 U.S. 848, 113 S.Ct. 144, 121 L.Ed.2d 96 (1992); *United States v. Ayala,* 894 F.2d 425, 429 n. 8 (D.C.Cir.1990), this Court deems it advisable to conduct a *Teague* analysis so as to provide a complete record for the parties.

■ Under *Teague,* a new rule is one that "breaks new ground or imposes a new obligation on the ... Government." *Teague,* 489 U.S. at 301, 109 S.Ct. at 1070. To put it differently, a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final. *Id.* The standard for what constitutes a new rule does not avail itself of a precise definition and the Supreme Court has acknowledged as much. *See Saffle v. Parks,* 494 U.S. 484, 488, 110 S.Ct. 1257, 1260, 108 L.Ed.2d 415 (1990). Still, the expression has been given rather broad applica-

tion by the Supreme Court. A rule is new if it is "susceptible to debate among reasonable minds," *Butler v. McKellar,* 494 U.S. 407, 414–17, 110 S.Ct. 1212, 1217, 108 L.Ed.2d 347 (1990), not clearly dictated by precedent, *Goeke v. Branch,* —— U.S. ——, 115 S.Ct. 1275, 131 L.Ed.2d 152 (1995) (per curiam), or "breaks new ground or imposes a new obligation on the ... Government." *Teague,* 489 U.S. at 301, 109 S.Ct. at 1070.

■ While this is a close case, this Court concludes that *Austin* enunciates a new rule of law that breaks new ground and imposes new obligations on the federal government.[9] As such, were *Teague* to apply, Fisher would be barred from raising his current claim in this proceeding, *Ross* notwithstanding. However, because of this Court's skepticism of *Teague's* applicability in this context, it will assess the substance of Fisher's claim, though in the end the result is the same, whether under *Teague* or on the merits of those claims.

## B. DOUBLE JEOPARDY

■ The Double Jeopardy Clause of the Fifth Amendment states that no person "shall ... be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. This protection is threefold: it shields individuals from (1) successive prosecutions for the same offense after conviction; (2) a second prosecution for the same offense after acquittal; and (3) multiple punishments for the same offense. *See Halper,* 490 U.S. at 440, 109 S.Ct. at 1897; *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076–77, 23 L.Ed.2d 656 (1969); *United States v. Caraballo–Cruz,* 52 F.3d 390, 391 (1st Cir.1995). Fisher's double jeopardy claim concerns the constitutional protection against multiple punishment.

---

9. At least three District Courts in the Ninth Circuit have faced the question whether *United States v. $405,089.23 U.S. Currency,* which applies *Austin* as Fisher would have this Court apply it and for which the Supreme Court has granted certiorari, states a new rule under the *Teague* analysis and each has answered that question in the negative. *See United States v. Tamez,* 881 F.Supp. 460 (E.D.Wash.1995); *United States v. Stanwood,* 872 F.Supp. 791 (D.Or.1994); *United States v. McCaslin,* 863 F.Supp. 1299 (W.D.Wash). However, because each of these courts concluded that the holding in *United States v. $405,089.23 U.S. Currency* was dictated by *Halper* and *Austin,* they provide little help in determining whether *Austin* itself enunciated a new rule.

Two recent unanimous Supreme Court decisions have scrutinized the multiple punishment prong of the Double Jeopardy Clause. In *Halper*, the Supreme Court announced for the first time that civil penalties may, in certain circumstances, constitute punishment for double jeopardy purposes. *Halper*, 490 U.S. at 448, 109 S.Ct. at 1901–02. The legal standard elucidated in *Halper* for resolving this issue is whether the sanction is merely remedial in nature or whether it also serves a deterrent or retributive purpose. *Id.*

In the second case, *Austin*, the Supreme Court concluded that sections 881(a)(4) and (7) constitute punishment and fall within the parameters of the Eighth Amendment Excessive Fines Clause analysis. In rejecting the government's assertion that civil forfeiture was remedial in nature, the Court stated that "forfeiture of property ... [is] a penalty that ha[s] absolutely no correlation to any damages sustained by society or to the cost of enforcing the law." *Austin*, 509 U.S. at 621–23, 113 S.Ct. at 2812 (quoting *United States v. Ward*, 448 U.S. 242, 254, 100 S.Ct. 2636, 2644, 65 L.Ed.2d 742 [1980] ).

Fisher argues that *Halper* and *Austin* provide a framework within which this Court should conclude that the administrative forfeiture of his vehicle constitutes punishment for purposes of double jeopardy analysis. There is a crucial distinction, however, between the civil forfeiture analyzed in *Austin* and the administrative forfeiture experienced by Fisher. To develop this distinction, a brief discussion of the nature and process of administrative forfeiture is necessary.

Administrative forfeitures are authorized by the procedural provisions of the customs laws, 19 U.S.C. §§ 1602–1621, and are incorporated by reference in 21 U.S.C. § 881(d). Under 19 U.S.C. § 1607(a)(3), "[A]ny vessel, vehicle, or aircraft used to import, export, transport or store illegal drugs" may be forfeited by the seizing agency, in this case the Drug Enforcement Administration, if the statutory requirements are met. Pursuant to 19 U.S.C. § 1609(a), absent a claim being filed and a cost bond given within twenty days of either receiving written notice of the

pending forfeiture or the first publication of the notice, administrative forfeiture of the property is authorized. Proper and timely filing of a claim and a cost bond halts the administrative forfeiture process and the matter is then referred to the United States Attorney for the district where the property was seized for commencement of civil judicial proceedings. *See* 19 U.S.C. §§ 1603(b) and 1608 (West Supp.1995). With this overview of administrative forfeiture in mind, we return to the merits of Fisher's double jeopardy claim.

■ While neither the Supreme Court nor the First Circuit have yet to address the issue of whether an **administrative** forfeiture equals punishment within the double jeopardy context, the Second, Third, Fifth, Seventh, Eighth, and Ninth Circuits have held that it does not. *See United States v. Idowu*, 74 F.3d 387, 393–396 (2d Cir.1996); *United States v. Sykes*, 73 F.3d 772, 773–774 (8th Cir.1996); *United States v. Cretacci*, 62 F.3d 307, 309 (9th Cir.1995); *United States v. Baird*, 63 F.3d 1213, 1216 (3d Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 909, 133 L.Ed.2d 841 (1996); *United States v. Arreola-Ramos*, 60 F.3d 188, 192 (5th Cir.1995); *United States v. Ruth*, 65 F.3d 599, 603 (7th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1548, 134 L.Ed.2d 651 (1996); and *United States v. Torres*, 28 F.3d 1463, 1465 (7th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 669, 130 L.Ed.2d 603 (1994). These courts reason that an individual who fails to contest the forfeiture is never a party to forfeiture proceeding and as a non-party, does not suffer punishment. The government urges this Court to follow this reasoning.

■ To invoke protection of the Double Jeopardy Clause, Fisher must establish that he has been subject to punishment in prior proceedings. *See Serfass v. United States*, 420 U.S. 377, 393, 95 S.Ct. 1055, 1065, 43 L.Ed.2d 265 (1975) (stating that it is a "fundamental principle that an accused must suffer jeopardy before he can suffer double jeopardy").[10] The post-*Halper* double jeop-

---

10. The government contends that the forfeiture proceeding does not implicate double jeopardy

protection because those protections are applicable only after there has been a prior criminal

ardy analysis requires a claimant to establish that his prior punishment was the functional equivalent of a [prior] criminal prosecution that placed him in jeopardy for the same offense. *Montana Department of Revenue v. Kurth Ranch,* 511 U.S. 767, ——, 114 S.Ct. 1937, 1948, 128 L.Ed.2d 767 (1994). One cannot be punished in a manner relevant to the Double Jeopardy Clause without being subject to a prior judicial proceeding.

Fisher contends that, despite the rulings of the several circuits, the proper test for establishing a double jeopardy violation is elucidated in *Ursery.*[11] However, *Ursery* did not involve an administrative forfeiture but rather concerned a forfeiture action brought before a District Court Judge, placed on the court's docket and scheduled for trial before the defendant entered into a consent judgment. Although the forfeiture in *Ursery* did not involve a judgment by the District Court, the claimant in *Ursery* invoked the judicial procedure. By contrast, the forfeiture of Fisher's vehicle did not involve any judicial proceeding, with the exception of Chief Judge Tauro's denial of Fisher's motion to return his vehicle—which occurred after the administrative forfeiture was complete. In *Ursery,* the Sixth Circuit ruled that Ursery had been put at risk of a forfeiture judgment, and had actually suffered a forfeiture, because he actively pursued the forfeiture

claim. *Ursery,* 59 F.3d at 572. The *Ursery* Court distinguished between one who contests a forfeiture and one who does not, thereby accepting the reasoning that "jeopardy does not attach to a civil forfeiture when a party claiming double jeopardy was not a party to the forfeiture proceeding, and thus was never at risk of having a forfeiture judgment entered against him." *Id.* (referring to the Seventh Circuit decision in *Torres,* 28 F.3d at 1465, which held that failure to file a claim or a cost bond precludes a defendant from raising a double jeopardy claim).[12]

In an attempt to dissuade this Court from adhering to the reasoning of the circuits listed above, Fisher's counsel urged this Court at oral argument to consider the opinion rendered in *United States v. 154 Manley Road,* 908 F.Supp. 1070 (D.R.I.1995) (Lisi, J.). Although *154 Manley Road* finds a double jeopardy violation, like *Ursery,* it is factually distinct from the case presently before this Court. *154 Manley Road* involved civil judicial forfeiture, not an administrative forfeiture as is at issue here. The property owner in *154 Manley Road* contested the forfeiture and a bench trial was held.[13] As this is the critical distinction, the analysis in *154 Manley Road* is inapplicable to Fisher's motion.

---

prosecution. *See* Government's Opposition at 7 n. 2. While historically, jeopardy has been associated with the actual trial of a criminal case, *see Breed v. Jones,* 421 U.S. 519, 528, 95 S.Ct. 1779, 1785, 44 L.Ed.2d 346 (1975) (stating that "jeopardy describes the risk traditionally associated with a criminal prosecution"); *United States v. Wilson,* 420 U.S. 332, 343, 95 S.Ct. 1013, 1021–22, 43 L.Ed.2d 232 (1975) (holding that jeopardy concerns an individual's right not to be tried for a criminal charge more than once), the Supreme Court has recognized that a civil sanction can be so punitive that it rises to the level of a criminal sanction. *See Halper,* 490 U.S. at 447–48, 109 S.Ct. at 1901–02; *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963) (invalidating a statute which prescribed loss of citizenship without a criminal trial for any person who remained outside of the United States in time of war for the purpose of evading military service).

**11.** The Sixth Circuit focused its analysis on "(1) whether the civil forfeiture ... constitutes 'punishment' for double jeopardy purposes; (2) whether the civil forfeiture and criminal conviction are punishment for the same offense; and

(3) whether the civil forfeiture and criminal prosecution are separate proceedings." *Ursery,* 59 F.3d at 571.

**12.** This distinction is made again by the Ninth Circuit. Whereas in *United States v. $405,089.23 U.S. Currency* the court ruled that a civil judicial forfeiture following a criminal conviction violated the Double Jeopardy Clause, in *Cretacci* the court ruled that administrative forfeiture does not constitute punishment for purposes of double jeopardy analysis because no one is punished by such a procedure. *Cretacci,* 62 F.3d at 309.

**13.** Indeed, the court in *154 Manley Road* discusses *United States v. Lane,* 891 F.Supp. 8 (D.Me. 1995), which held that jeopardy never attached to the defendant who was never a party to the civil forfeiture action. The court stated that *Lane* "did not answer the specific inquiry now before this court," thereby recognizing the distinction between a defendant who is a party to a forfeiture proceeding and one who is not. *154 Manley Road,* 908 F.Supp. at 1076.

Since Fisher failed to contest the forfeiture of his vehicle, the facts of his case fit squarely within the decisions of the Second, Third, Fifth, Seventh, Eighth, and Ninth Circuits cited above.[14] Fisher never became a party to any judicial forfeiture proceeding. No trial was ever held on the merits of the forfeiture. The ruling urged by Fisher would result in this Court condoning, even encouraging, individuals whose property has been seized due to involvement in drug trafficking to sit idly by while the property is administratively forfeited, thus barring subsequent criminal prosecution on double jeopardy grounds.

Although, in reality, Fisher suffered two harms—the loss of his vehicle as a result of the forfeiture process and the loss of his liberty in the criminal trial—he was only party to the criminal prosecution and therefore suffered only one punishment for double jeopardy purposes. The very nature of administrative forfeiture does not entail a determination of ownership of the property. In that regard, the process is akin to the taking of abandoned or ownerless property. *See Baird*, 63 F.3d at 1217; *Cretacci*, 62 F.3d at 310. While it seems to be clear that the government knew that the vehicle in fact belonged to Fisher, it was forfeited as if it were without an owner. *See Baird*, 63 F.3d at 1217 ("[A]dministrative forfeiture is, in reality, a non-proceeding—it is merely the consequence of no one having come forward to claim the property seized or contest its forfeitability"). This conclusion is reinforced by the wording of the summary forfeiture statute itself which states that undeclared property may be forfeited and sold in "the same manner as merchandise abandoned to the United States[.]" 19 U.S.C. § 1609(a) (West Supp.1995).

While Fisher consequently lost his automobile as a result of the administrative forfeiture proceeding, the non-judicial process was "wholly unattached to any specific person,

and thus cannot serve as the basis for a double jeopardy claim." *Baird*, 63 F.3d at 1218. Due to the very nature by which the property was forfeited, Fisher's claim must fail.

## III. CONCLUSION

While Fisher did not waive his claim of double jeopardy, whether because *Teague* bars him from making an argument under *Austin* at this point or because he was not punished as a result of the administrative forfeiture of his automobile, Fisher's petition for habeas corpus must be, and hereby is, *DENIED.*

---

14. It is true, as Fisher contends, that *United States v. Brophil*, 899 F.Supp. 1257 (D.Vt.1995) held that an uncontested administrative forfeiture can trigger the Double Jeopardy Clause. Less than four months after the *Brophil* decision, however, the Second Circuit issued its decision in *Idowu, supra*, which held that administrative forfeiture **cannot** be a basis for vacating subse-

quent criminal convictions on double jeopardy grounds, thus eviscerating the *Brophil* decision. Indeed, as the government correctly points out, the *Brophil* court itself observed that "because the Second Circuit has not yet taken a position on the issue, [the district court was] free to reach [its] own conclusion...." 899 F.Supp. at 1260 n. 4.