107 F.3d 5
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES, Appellee,
v.
Andre GILMORE, Defendant-Appellant.
 No. 96-1488.
 United States Court of Appeals, Second Circuit.
 Feb. 24, 1997.
 
 1
 APPEARING FOR APPELLANT: DARRELL B. FIELDS, The Legal Aid Society, Federal Defender Division, Appeals Bureau, New York, NY.
 
 
 2
 APPEARING FOR APPELLEE: RICHARD F. ALBERT, Assistant United States Attorney, New York, NY.
 
 
 3
 Before JACOBS, CALABRESI and LAY,* Circuit Judges.
 
 
 4
 This cause came on to be heard on the transcript of record from the United States District Court for the Southern District of New York and was argued by counsel.
 
 
 5
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court be and it hereby is AFFIRMED.
 
 
 6
 Defendant Andre Gilmore appeals from a July 17, 1996 judgment of the United States District Court for the Southern District of New York (Preska, J.) convicting him, pursuant to a guilty plea, of conspiracy to distribute and possess with intent to distribute cocaine (in violation of 21 U.S.C. § 846), and possession with intent to distribute cocaine (in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(B)). Gilmore's final sentence--37 months imprisonment, a five-year term of supervised release, and a special assessment of $100--reflects several reductions pursuant to the mitigating provisions of the United States Sentencing Guidelines ("U.S.S.G."), including a two-level reduction under U.S.S.G. § 3B1.2(b ) for his "minor" role in the crime.
 
 
 7
 Gilmore appeals his sentence on the ground that, instead of a two-level reduction for "minor" participation, he should have been granted a four-level reduction for his "minimal" role, pursuant to U.S.S.G. § 3B1.2(a ). Gilmore argues that the district court erred by denying him the four-level reduction and by failing to make specific factual findings in support of its determination that such a reduction was unwarranted.
 
 
 8
 This Court reviews a district court's factual findings as to the extent of a defendant's role in an offense under the clearly erroneous standard, but "[w]e review de novo the district court's legal conclusion as to whether the circumstances constitute 'minimal' or 'minor' participation." United States v. Gaston, 68 F.3d 1466, 1468 (2d Cir.1995) (citations omitted). On the record before us, we have no difficulty affirming the district court's decision not to grant Gilmore a four-level reduction for "minimal" participation, even pursuant to our de novo review.
 
 
 9
 Gilmore argues that the factual findings underlying the district court's sentencing decision were inexplicit; however, the facts of this case were never in dispute. See United States v. Thompson, 76 F.3d 442, 456 (2d Cir.1996) (district court is required to make findings sufficient to permit appellate review "[a]s to facts disputed in connection with sentencing") (emphasis added). The full details of Gilmore's participation in the crime were set forth in his plea allocution and "proffer session" with the government, and were reiterated in his pre-sentence report ("PSR"), which was expressly made part of the district court's record at the outset of the sentencing hearing. See id. ("It is sufficient ... if the court indicates, either at the sentencing hearing or in the written judgment, that it is adopting the recommendations in the PSR.").
 
 
 10
 According to the uncontested facts, Gilmore was hired by two men to carry cocaine by train from New York City to New London, Connecticut, where it was to be sold. Gilmore--whose job was to carry the drugs on his person while waiting in the station and once aboard the train--met the two individuals in Brooklyn, drove with them to Penn Station in Manhattan, and embarked with them on an Amtrak train to New London. The plan was for Gilmore to hand the cocaine over to his colleagues upon reaching their destination; Gilmore would then return to New York City, and the other two would return the next day after delivering the drugs to a contact in New London. Gilmore was not the owner of the cocaine, did not know the identity of its source or the name or address of those to whom it would be sold in New London, and did not participate in the sale. Nonetheless, Gilmore was to be paid $500 for his transportation duties.
 
 
 11
 Amtrak police spotted Gilmore in the station in possession of a blue denim gym bag, questioned him (and his associates) about the bag once he was en route, and eventually arrested him after searching the bag and discovering approximately 75-90 packets of (likely crack) cocaine. The total amount of cocaine recovered was more than 28 grams, which the government estimated would have a resale value of $2,000 to $4,000.
 
 
 12
 Gilmore pled guilty on March 29, 1996. The Probation Department prepared a PSR recommending that Gilmore receive a two-level reduction in sentence, pursuant to U.S.S.G. § 3B1.2(b), for his "minor" role in the crime. Gilmore's counsel objected to that recommendation as insufficient in a July 3, 1996 letter to the district court, and again at Gilmore's sentencing on July 17, 1996.
 
 
 13
 At the sentencing hearing, Gilmore's counsel expressly requested a four-level reduction for "minimal" participation, pursuant to U.S.S.G. § 3B1.2(a), and counsel, the government, and the district court engaged in a lengthy discussion of whether such a reduction was warranted. Throughout this debate, Gilmore's principal argument for treatment as a "minimal" participant was based upon one portion of Application Note 2 of U.S.S.G. § 3B1.2, which states that a four-level reduction "would be appropriate ... in a case where an individual was recruited as a courier for a single smuggling transaction involving a small amount of drugs."
 
 
 14
 The government argued in opposition--we think correctly--that "you cannot read that one phrase in isolation from the rest of the application note,"[1] and that when the statute is read in the proper context it is evident that a "minimal role [reduction] is intended to apply to someone who has a role that is minimal in relation to a larger sum of relevant conduct for which he would otherwise be held accountable." Joint Appendix at 107 (emphasis added). The government also argued that even the two-level reduction for "minor" participation (let alone a four-level "minimal" role reduction) was inappropriate:
 
 
 15
 This was a conspiracy to transport and distribute a relatively small amount of crack up to Connecticut for resale[,] and the defendant was the person who brought it up to Connecticut for resale. He was at the heart of what this limited, narrow conspiracy was about. Granted he apparently ... was not the person who was going to ... carry out the sale or get the majority of the proceeds, but he was going to get a significant amount of the proceeds.
 
 
 16
 Id. at 108.
 
 
 17
 We think the government's argument emphasizes the critical facts in this case and aptly demonstrates why, under this Court's rulings, Gilmore was not a "minimal" participant within the meaning of the guidelines. See, e.g., United States v. Idowu, 74 F.3d 387, 397 (2d Cir.) ("[W]hether a role adjustment is appropriate in 'courier' ... cases depends upon 'the nature of the defendant's relationship to the other participants, the importance of the defendant's actions to the success of the venture, and the defendant's awareness of the nature and scope of the criminal enterprise.' ") (quoting United States v. Garcia, 920 F.2d 153, 155 (2d Cir.1990) (per curiam)), cert. denied, 116 S.Ct. 1888 (1996). More important for purposes of disposing of Gilmore's appeal, we also conclude that the district court's decision to deny him a four-level reduction was indeed based on a full consideration of (and proper findings as to) these crucial facts. This is clear from the transcript of Gilmore's sentencing hearing.
 
 
 18
 For example, in questioning Gilmore's reliance on Application Note 2 of U.S.S.G. § 3B1.2, the district court properly distinguished the scenario envisioned by the note from the "schemes at hand here": "Certainly a courier for a relatively small drug amount in the scheme of an enormous organization might well be a minimal participant, whereas the scheme [involving Gilmore and his co-conspirators] is a more modest scheme." Joint Appendix at 100. Similarly, the district court asked pointed questions of the government to determine what "the total proceeds of the transaction [were] going to be[.] I understood Mr. Gilmore was going to get $500, ... but what do you think the proceeds in toto were?" Id. at 109. The government responded that it estimated the total value of the drugs Gilmore and his associates were going to sell at "something in the neighborhood of $2,000 in New York City, more than that outside of New York[,] may[be] double, something like $4,000." Id. Finally, as the government correctly noted, Gilmore's knowledge about the essential aspects of the drug-selling plan was undisputed and was made clear in the record before the district court: Gilmore travelled to Connecticut "alongside the individuals who are about to carry out the transaction. He knows the transaction is going to occur in the New London area. He has that level of familiarity with the transaction." Id.
 
 
 19
 The district court's statements and inquiries, and the responses that were elicited, demonstrate that the court did conduct the proper investigation and consider the appropriate factors in deciding whether and how much to reduce Gilmore's sentence. We have stated that "the defendant's role in the offense is determined not only by comparing the acts of each participant in relation to the relevant conduct for which the participant is held accountable, ... but also by measuring each participant's individual acts and relative culpability against the elements of the offense of conviction." United States v. Lopez, 937 F.2d 716, 728 (2d Cir.1991) (internal quotations and citations omitted). We have expressly noted the importance, in conducting this analysis, of the defendant's knowledge of the criminal plan, the magnitude of his role relative to that of his confederates and to the scale of the scheme itself, and the comparative size of his payment for completing his assignment. See id. at 727 (defendant's "kn[owledge] of the plan to sell 50 kilograms of cocaine," his "travell[ing] from Miami to New York to help with the transaction," and his "expect[ation of] a large payment for his services," constituted "clear evidence" that he was "more than the type of minimal participant contemplated by the Guidelines").[2]
 
 
 20
 In these circumstances, we hold that the district court's "find[ing] that the further reduction requested by [Gilmore] for minimal role is inappropriate" and its "find[ing] that the two-point reduction [for minor participation] is appropriate," did satisfy the standards of this Court for making an individualized, fact-based determination as to whether such sentencing reductions are warranted. Cf., e.g., United States v. LaValley, 999 F.2d 663, 665-66 (2d Cir.1993) (vacating denial of "minor" role reduction where district court "found, apparently as a matter of law, that [the defendant] could not be a minor participant" solely because of his job definition within the conspiracy). Although the district court did not preface its decision by summarizing all of its underlying findings (express, implicit, or assumed from the record), the court did express the correct legal standard (quoted above from Lopez, 937 F.2d at 728), and its decision plainly reflected the prior, lengthy deliberation that had taken place during the sentencing hearing. Gilmore's claim that the denial of his "minimal" role reduction was unsupported by specific findings therefore has no merit.
 
 
 21
 We also conclude, in any event, that on the record before us Gilmore's actions did not constitute "minimal" participation in the crime for which he was convicted. Gilmore can hardly complain about a lack of factual findings in the district court when he does not (and cannot) point to any facts in the record that would move this Court, pursuant to our de novo review, to vacate the district court's determination.
 
 
 22
 The district court's judgment of conviction and sentence is affirmed in full.
 
 
 
 *
 The Honorable Donald P. Lay, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation
 
 
 [1]
 Application Note 2 of U.S.S.G. § 3B1.2 states in full:
 It is intended that the downward adjustment for a minimal participant will be used infrequently. It would be appropriate, for example, for someone who played no other role in a very large drug smuggling operation than to offload part of a single marihuana shipment, or in a case where an individual was recruited as a courier for a single smuggling transaction involving a small amount of drugs.
 
 
 [2]
 In light of these standards, Gilmore's endorsement of the government's depiction of this case as "a conspiracy to transport and distribute 'a relatively small amount of crack' to Connecticut," Appellant's Brief at 15, misses the point. Because the decision whether to grant a role reduction is based on a comparative evaluation of the defendant's role in the overall context of the offense, Gilmore's role as the sole actual drug "transporter" in a conspiracy limited to "transport[ing] and distribut[ing] 'a relatively small amount of crack' " indicates that his participation in that conspiracy was anything but "minimal."